**NEW ENGLAND POWER COMPANY et al., Petitioners,**

v.

**FEDERAL POWER COMMISSION et al., Respondents.**

No. 6434.

United States Court of Appeals
First Circuit.

Heard April 5, 1965.

Decided July 21, 1965.

Donald G. Allen, Boston, Mass., with whom Philip H. R. Cahill, Boston, Mass., was on brief, for petitioners.

Israel Convisser, Washington, D. C., Atty., F. P. C., with whom Richard A. Solomon, Gen. Counsel, and Howard E. Wahrenbrock, Sol., F. P. C., were on brief, for Federal Power Commission, respondent.

George Spiegel, Washington, D. C., with whom Reuben Goldberg and Goldberg & Spiegel, Washington, D. C., were on brief, for Shrewsbury Municipal Light Dept. and Town of Shrewsbury, Mass., respondents.

Before ALDRICH, Chief Judge, and MARIS * and BURGER, * Circuit Judges.

MARIS, Circuit Judge.

This is a proceeding in which New England Power Company (hereinafter called NEPCO) and Massachusetts Electric Company (hereinafter called Mass. Electric) have petitioned for the review of an order of the Federal Power Commission which requires NEPCO to enter into a contract with and to sell electric energy to the Municipal Light Department of the Town of Shrewsbury, Massachusetts, and cancels the contract under which such service has heretofore been rendered by Mass. Electric. NEPCO and Mass. Electric are subsidiaries of New England Electric System (hereinafter called NEES) and both are public utilities subject to the jurisdiction of the Federal Power Commission under Part II of the Federal Power Act, 16 U.S.C.A. § 824 et seq.

The Town of Shrewsbury, a municipal corporation of the Commonwealth of Massachusetts, has no generating facilities and has heretofore purchased electric energy from Mass. Electric for resale and distribution within the town through its own electric distributing system. Mass. Electric, which likewise owns no generating capacity, buys electric energy from NEPCO and sells it both at wholesale and retail in Massachusetts. The energy which Mass. Electric has heretofore sold to Shrewsbury has thus been received by Mass. Electric from NEPCO. The delivery has taken place at NEPCO's substation in the Town of Shrewsbury where energy is received over NEPCO's 69 kv lines, transformed down to 13.8 kv and delivered at NEPCO's 13.8 kv terminals to Mass. Electric. The energy then passed into Mass. Electric's adjacent switch station where it was delivered to Shrewsbury's taps and carried by Shrewsbury across an alley to its new Worthington Avenue substation. The total dis-

* By designation.

tance between the 13.8 kv terminals of NEPCO from which the energy was delivered to Mass. Electric and Shrewsbury's taps at which the town received the energy from Mass. Electric is less than 50 feet.

In 1962 the Town of Shrewsbury through its Municipal Light Department filed a complaint with the Federal Power Commission alleging that since 1958 it had been making efforts to obtain direct service from NEPCO without success and requesting the Commission to direct NEPCO to supply electric energy to the town on a nondiscriminatory basis. NEPCO filed an answer and motion to dismiss the complaint. The motion asserted that the Town of Shrewsbury was not a proper party to initiate the proceedings under Section 202(b) of the Federal Power Act nor a "person engaged in the transmission or sale of electric energy" within the meaning of that subsection and that it was neither necessary nor appropriate to order an additional interconnection since Shrewsbury was already physically interconnected with NEPCO through Mass. Electric. On May 2, 1963 the Commission denied the motion to dismiss.

Hearings were then held before an examiner whose initial decision was filed on February 13, 1964. On July 27, 1964 the Commission filed its opinion and order. A concurring opinion was filed by two members of the Commission. The examiner had held that NEPCO should sell and deliver energy to Shrewsbury at 69 kv. The Commission upheld the examiner's decision to the extent that it required NEPCO to sell to Shrewsbury but ordered that delivery of energy be continued at 13.8 kv rather than 69 kv. The Commission concluded that direct sales by NEPCO to Shrewsbury would save the town over $42,000 a year and directly benefit its customers. Moreover, purchasing at NEPCO rates, the town would be able to compete for industrial loads with the surrounding areas where Mass. Electric was selling to industries at the same rate it was selling to Shrewsbury,

and in some cases at lower special contract rates.

The Commission could see no reason why the middleman, Mass. Electric, should not be eliminated, noting that prevailing industry practice is for generating utilities to avoid resale middlemen where customers can be served directly. It found that Mass. Electric's loss of income, which it regarded as of questionable relevance, would be relatively small, and Mass. Electric would be compensated by NEPCO for any continued use of its facilities. On the other hand NEPCO's revenues would increase as a result of selling directly to Shrewsbury. In weighing these considerations the Commission concluded that a direct sale by NEPCO was dictated by the public interest.

In declining to order the delivery of energy at 69 kv the Commission recognized that the 69 kv connection would provide firm power, thus freeing Shrewsbury from any possible dependence upon back-up from Mass. Electric's 13.8 kv cables. It considered, however, that the existing interconnection was also adequate and, therefore, in the interests of economy and flexibility it ordered NEPCO to serve Shrewsbury at 13.8 kv leaving it to NEPCO, as a matter of management judgment, to decide whether to arrange with Mass. Electric to use its existing facilities or to make a direct connection.

In reaching its conclusion the Commission stated that it was not determining whether other resale customers which Mass. Electric supplied with energy received from NEPCO were entitled to direct service from NEPCO. Any such request, it believed, would have to be considered on its own merits with particular reference to the functions of NEPCO and Mass. Electric in the NEES system and on a record not then before the Commission.

Concluding that the Town of Shrewsbury was a "person" within the meaning of Section 202(b) of the Federal Power Act and accordingly entitled to the benefits of that subsection the Commission

ordered NEPCO to sell electric energy to Shrewsbury under its standard wholesale rate at 13.8 kv and to enter into a standard form of contract with Shrewsbury for such service. The Commission's order further provided that in effecting such sale NEPCO may employ the present facilities of Mass. Electric but shall be responsible for providing firm service in accordance with good utility practice and shall meet any costs necessary to do so. Shrewsbury was required to meet any costs necessary to increase the capacity of its facilities on a firm basis needed to effect the sale thus ordered. Also the Commission's order cancelled the existing contract under which Shrewsbury had been receiving service from Mass. Electric. Finally, the Commission directed that jurisdiction of the proceeding be retained so that if Shrewsbury should experience delays in the future in obtaining any necessary increments of power or a higher voltage when necessary, which the experience of the past indicated might occur, an application to modify the order might be entertained and appropriate action taken promptly to assure adequate service.

On August 26, 1964 NEPCO and Mass. Electric filed a joint application for rehearing. On the same day they submitted to the Commission proposals, to be effective October 1, 1964, for (1) a reduced NEPCO wholesale Rate W–4, (2) a new NEPCO Rate R–1, more expensive than W–4, for resale customers connected directly with NEPCO affiliates which received their energy from NEPCO, this rate being specifically made available to Shrewsbury, (3) the release by Mass. Electric of these customers from their present contracts upon the commencement of service by NEPCO, and (4) the providing by Mass. Electric to NEPCO of the use of capacity to make deliveries under Rate R–1 and an agreement by NEPCO to compensate Mass. Electric for the value of the facilities utilized, which included $16,685.00 a year for the Shrewsbury facilities. The Commission denied rehearing, holding that Rate R–1, which NEPCO urged should be applied to its service to Shrewsbury, was not relevant, there being no evidence as to whether Shrewsbury would properly fall into the Rate R–1 class. On October 1, 1964 the Commission accepted for filing the new NEPCO rates which had been proposed August 26, 1964, and ruled that Shrewsbury might, at its option, take service from NEPCO at either the W–4 or R–1 rate. NEPCO did not apply for rehearing or review of the order of October 1, 1964 and that order has apparently become final.

On November 20, 1964 NEPCO and Mass. Electric filed the petition now before us for review of the Commission's order of July 27, 1964. Their principal contention in this court is that the Commission was not empowered by the Federal Power Act to make the order under review. The petitioners' attack is two pronged. They say first that the Town of Shrewsbury is not a "person" entitled to make an application under section 202 (b) of the Act.[1] Secondly, they assert

1. "(b) Whenever the Commission, upon application of any State commission or of any person engaged in the transmission or sale of electric energy, and after notice to each State commission and public utility affected and after opportunity for hearing, finds such action necessary or appropriate in the public interest it may by order direct a public utility (if the Commission finds that no undue burden will be placed upon such public utility thereby) to establish physical connection of its transmission facilities with the facilities of one or more other persons engaged in the transmission or sale of electric energy, to sell energy to or exchange energy with such persons: *Provided,* That the Commission shall have no authority to compel the enlargement of generating facilities for such purposes, nor to compel such public utility to sell or exchange energy when to do so would impair its ability to render adequate service to its customers. The Commission may prescribe the terms and conditions of the arrangement to be made between the persons affected by any such order, including the apportionment of cost between them and the compensation or reimbursement reasonably due to any of them." 16 U.S. C.A. § 824a(b).

that in any event the Commission's authority under section 202(b) is limited to circumstances where a new physical connection is required and that, except under those circumstances, the Commission has no authority to order one public utility to furnish direct service to another entity for resale to its customers. We find no merit in either contention.

■ The contention that the Town of Shrewsbury is not a "person engaged in the * * * sale of electricity" within the meaning of that phrase as used in section 202(b) is based upon the definition of "person" in section 3 of Part I of the Act, 16 U.S.C.A. § 796, which when read with the definition of "corporation" in that section appears to exclude municipalities. The petitioners also rely on section 201(f) which states that "No provision in this Part shall apply to, or be deemed to include, the United States, a State or any political subdivision of a State, or any agency, authority, or instrumentality of any one or more of the foregoing, * * * unless such provision makes specific reference thereto." 16 U. S.C.A. § 824(f). These contentions have however, heretofore been categorically rejected by the Supreme Court. Construing section 201(d) which provides that "The term 'sale of electric energy at wholesale' when used in this Part means a sale of electric energy to any person for resale", 16 U.S.C.A. § 824(d), that Court has held that the provisions of Part II of the Act (which part includes section 202) are applicable to municipal subdivisions of the State which purchase electric energy for resale. United States v. Public Utilities Commission of California, 1953, 345 U.S. 295, 73 S.Ct. 706, 97 L.Ed. 1020. It is true that the California case involved a licensee of a hydroelectric power project under Part I of the Act while NEPCO here is a public utility engaged in the interstate transmission of electric energy. It is also true that the California case was concerned with rates, which are dealt with in other sections of Part II of the Act, while here we are concerned with service under section 202(b)

of Part II. The distinctions are without significance, however, in the light of the Supreme Court's rationale that Part II was enacted to fill up, and to fill up completely, the regulatory gap found to exist by the Court in Public Utilities Commission of Rhode Island v. Attleboro Stream & Electric Co., 1927, 273 U.S. 83, 47 S.Ct. 294, 71 L.Ed. 549. Thus in the California case the Court said (345 U.S. 295, 311, 73 S.Ct. 706, 715):

"Part II is a direct result of Attleboro. They are to be read together. The latter left no power in the states to regulate licensees' sales for resale in interstate commerce, while the former established federal jurisdiction over such sales. Discussion of the constitutional problem as reflected in that statute and the Natural Gas Act in recent cases support this conclusion. Especially in the litigation arising under the Gas Act has this Court expressed the view that the limitations established on Commission jurisdiction therein were designed to coordinate precisely with those constitutionally imposed on the states. Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 609–610 [64 S.Ct. 281, 291, 88 L.Ed. 333]; Panhandle [Eastern] Pipe Line Co. v. Public Service Commission, 332 U.S. 507, 514–515 [68 S.Ct. 190, 193–194, 92 L.Ed. 128]; Interstate Natural Gas Co. v. Federal Power Commission, 331 U.S. 682, 690–691 [67 S.Ct. 1482, 1487, 91 L. Ed. 1742]; Illinois Natural Gas Co. v. [Central Illinois] Public Service Co., 314 U.S. 498, 506 [62 S.Ct. 384, 387, 86 L.Ed. 371]."

And see Federal Power Commission v. Southern California Edison Co., 1964, 376 U.S. 205, 216, 84 S.Ct. 644, 11 L.Ed.2d 638. The Commission was, therefore, right in holding that Shrewsbury is to be regarded as a "person engaged in the * * * sale of electricity" within the meaning of section 202(b) and was entitled as such to file its application with the Commission under that section. We,

of course, do not have before us, and we do not pass upon, the question whether a municipality which generates as well as distributes electricity is to be regarded as a "person" under this section of the Act.

■■ We hold, also, that the Commission was acting within its powers under section 202(b) of the act in ordering NEPCO to sell and deliver electric energy directly to Shrewsbury even though a physical connection through Mass. Electric already existed between them and even though the Commission did not order NEPCO at all events to provide a new connection but left it to NEPCO's managerial judgment whether to do so or to arrange with Mass. Electric to use the latter's existing interconnection. As we have seen, section 202(b) authorizes the Commission to "direct a public utility * * * to establish physical connection of its transmission facilities with the facilities of one or more other persons engaged in the transmission or sale of electric energy, to sell energy to or exchange energy with such persons * *." The petitioners would have us construe this language as if it read in the conjunctive: "to establish physical connection * * * *and thereupon* to sell energy" etc. We have considered the petitioners' rather involved argument, with its references to legislative history, in support of this construction of the statutory language but we are not convinced by it. The plain language of the subsection is in the disjunctive, and we think it must be read as empowering the Commission to direct a public utility to establish a physical connection of its transmission facilities with the facilities of another entity engaged in the transmission or sale of electric energy, or to order the utility to sell energy to or exchange energy with such other entity, or to do both, as the public interest requires.

■ Moreover we think that the Commission may direct a public utility to establish a physical connection with a "person" engaged in the transmission or sale of electric energy even though a connection through another utility's facilities already exists. To hold otherwise would virtually emasculate the subsection in view of the almost universal interconnections which now exist among electric utilities in the eastern part of the United States. And if, as we hold, the Commission has this power it necessarily follows that it may permit a utility which has been directed to sell and deliver energy to another entity for resale to exercise its managerial judgment as to whether to provide a new physical connection or to arrange to use an existing interconnection through the facilities of a third utility. The Commission's power to make such orders under section 202(b) as it finds necessary or appropriate in the public interest is plenary. Federal Power Commission v. Southern California Edison Co., 1964, 376 U.S. 205, 216, 84 S.Ct. 644, 11 L.Ed.2d 638, subject only to the limitations imposed by the subsection that no undue burden shall be placed thereby upon the public utility subject to such an order and that the order will not compel the enlargement of generating facilities for such purposes nor compel such public utility to sell or exchange energy when to do so would impair its ability to render adequate service to its customers. It is clear that in the present case these statutory limitations have not been infringed by the Commission's order. Indeed the grant of the right to NEPCO to exercise its managerial judgment as to whether to make a new physical connection with Shrewsbury's facilities or to arrange to use Mass. Electric's existing connection was particularly appropriate here where both were affiliates of NEES.

■ The petitioners further contend that the Commission erroneously excluded certain evidence which they offered and that certain of its findings are inconsistent with its elimination of Mass. Electric as a useless middleman. It is sufficient to say that we have considered these contentions and find them to be

wholly without merit. Nor do we see any merit in the petitioners' contention that Shrewsbury should be required to pay for the use of Mass. Electric's facilities required for delivery of energy to the Town and for back-up protection. For NEPCO has not been ordered to use those facilities, but merely to provide service to Shrewsbury. It is, therefore, NEPCO's obligation to provide the necessary facilities to deliver the energy to Shrewsbury's taps. This it may do by constructing the necessary connecting facilities or, at its option, by arranging with Mass. Electric to use the latter's existing facilities. Since it is NEPCO's obligation to afford Shrewsbury the service, the provision of the necessary facilities, in either case, is rightly at NEPCO's cost. Indeed we find it rather difficult to believe that this contention is seriously made in view of the proposals made by NEPCO and Mass. Electric on August 26, 1964 and accepted by the Commission on October 1, 1964. For under those proposals NEPCO has agreed to pay to Mass. Electric the sum of $590,310 annually for the use of Mass. Electric capacity in making delivery to NEPCO resale customers formerly served by Mass. Electric, and included is an annual payment of $16,685.00 for the Mass. Electric interconnecting facilities with the Town of Shrewsbury.

The petitioners' final contention is that the Commission's retention of jurisdiction over these proceedings was erroneous. It is sufficient in this regard to say that this portion of the Commission's order is not reviewable here since it is not an order of a definitive character dealing with the merits of the proceeding. Federal Power Commission v. Metropolitan Edison Co., 1938, 304 U.S. 375, 384, 58 S.Ct. 963, 82 L.Ed. 1408. It accordingly does not present a justiciable controversy. Compare California Oregon Power Co. v. Federal Power Commission, 1956, 99 U.S.App.D.C. 263, 239 F.2d 426; Sun Oil Co. v. Federal Power Commission, 5 Cir., 1961, 287 F.2d 39.

The order of the Federal Power Commission will be affirmed.