**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No.  99-60453

EL PASO ELECTRIC COMPANY,

Petitioner,

VERSUS

FEDERAL ENERGY REGULATORY COMMISSION
and UNITED STATES OF AMERICA,

Respondents.

Petition for Review of Orders
of the Federal Energy Regulatory Commission

February 9, 2000

Before DUHÉ, BARKSDALE, and DENNIS, Circuit Judges.

DUHÉ, Circuit Judge:

Petitioner El Paso Electric Company ("EPE") seeks review of two orders of the Federal Energy Regulatory Commission ("FERC"): one requiring EPE to sell power at wholesale to the City of Las Cruces, New Mexico, 86 FERC ¶ 61,065 (1999) (the "Order"); the other denying EPE's motion for rehearing and dismissing its motion for stay as moot, 87 FERC ¶ 61,220 (1999) (the "Rehearing Order"). For the reasons stated herein, we AFFIRM in part and REVERSE in part both orders and REMAND for further proceedings consistent with this opinion.

BACKGROUND

EPE is an integrated public utility that generates, transmits, and sells electricity at retail and wholesale in west Texas and south central New Mexico. EPE owns and operates integrated generating plants, transmission lines, and distribution systems serving approximately 30,000 customers in Las Cruces, 30,000 other New Mexican customers, and 210,000 customers in west Texas.

The City of Las Cruces, New Mexico (the "City"), a municipal corporation organized under the laws of New Mexico, is a municipal utility that owns electric distribution facilities in an industrial park on the outskirts of Las Cruces. The City sells power to approximately thirty customers in the industrial park. Many of these customers are subdivisions of the City.

The City plans to supplant EPE as the retail provider of electricity to the 30,000 EPE customers in Las Cruces. The City insists that this change in service will benefit its citizens by lowering costs and providing more reliable service than that offered by EPE. To this end, the City initiated condemnation proceedings to obtain immediate possession of EPE's local distribution system.[1] The City intends to sever these facilities from EPE's interconnected system.

In order to proceed with its planned condemnation, the City

---

[1]The voters of Las Cruces approved the City's plan to initiate condemnation proceedings by a two to one margin in an August 1994 vote.

must demonstrate that it has a firm source of power. As the City does not own or operate the requisite facilities, it must seek this firm source of power from outside providers.

The City has attempted to secure a firm source of power in two ways. First, it contracted with Southwestern Public Service Co. ("SPS") to purchase power and attempted to have EPE transmit the electricity to Las Cruces across EPE's Eddy County Tie.[2] EPE refused to transmit the power, citing load concerns. SPS filed a complaint with FERC requesting that the agency order EPE to provide transmission services pursuant to EPE's open-access transmission tariff. See Order, 86 FERC at ¶ 61,250. At the time of this writing, FERC has received recalculated compliance filings from EPE in this matter and has not ruled on SPS's complaint.

In its second attempt to secure a firm source of power, the City filed a complaint under Section 202(b) of the Federal Power Act (the "Act"), 18 U.S.C. § 824a(b), requesting that FERC issue a temporary order requiring EPE to sell wholesale power to the City. Without holding an evidentiary hearing, a divided FERC issued a summary order granting the City's request. See Order, 86 FERC at ¶ 61,254. A similarly divided FERC summarily denied EPE's subsequent motion for rehearing. See Rehearing Order, 87 FERC at ¶ 61,874. EPE appeals these decisions asserting that the Order exceeds FERC's authority under the Act and that FERC failed to

---

[2]The Eddy County Tie is an EPE-owned high-voltage direct interconnection between SPS's and EPE's respective systems.

consider certain genuine issues of material fact regarding the effects of the Order.

DISCUSSION

I.  FERC's Section 202(b) Authority

Section 202(b) of the Federal Power Act provides:

> Whenever the Commission, upon application . . . of any person engaged in the transmission or sale of electric energy, . . . , finds such action necessary or appropriate in the public interest it may by order direct a public utility (if the Commission finds that no undue burden will be placed upon such public utility thereby) to establish physical connection of its transmission facilities with the facilities of one or more other persons engaged in the transmission or sale of electric energy, to sell energy to or exchange energy with such persons: *Provided*, That the Commission shall have no authority to compel the enlargement of generating facilities for such purposes, nor to compel such public utility to sell or exchange energy when to do so would impair its ability to render adequate service to its customers.

16 U.S.C. § 824a(b) (emphasis in original).  EPE argues that FERC exceeded its authority under the statute because the City is not "engaged in the transmission or sale of electric energy" and because the Act does not grant to FERC the same "public interest" authority to order sales of electricity as it does to order interconnection of electric facilities.  We disagree.

To decide whether or not FERC had the statutory authority to issue the Order, we must review the agency's interpretations under the <u>Chevron</u> doctrine.  <u>See</u> <u>Chevron U.S.A., Inc. v. Natural</u>

4

<u>Resources Defense Council, Inc.</u>, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), <u>Texas Office of Public Util. Counsel v. Federal Communications Comm'n</u>, 183 F.3d 393, 409 (5th Cir. 1999). Key to this inquiry is determining whether or not the statute is ambiguously worded. If "Congress has directly spoken to the precise question at issue," we must "give effect to the unambiguously expressed intent of Congress." <u>Chevron</u>, 467 U.S. at 842-43. We may reverse an agency's interpretation of an unambiguous statute only if it does not conform to the plain meaning of the statute. <u>See</u> <u>Public Util. Counsel</u>, 183 F.3d at 409. If, however, the statute is ambiguous or silent, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." <u>Chevron</u>, 467 U.S. at 843. Thus, we may reverse an agency's construction of an ambiguous or silent statute only if we find it to be "arbitrary, capricious, or manifestly contrary to the statute." <u>Id.</u> at 844.

EPE reasons that because the City is not currently providing power to the inhabitants of Las Cruces, the City is not engaged in the transmission or sale of electric energy as required by the Act. To this end, EPE relies heavily upon <u>Niagara Mohawk Power Corp. & Town of Massena, New York</u>, 56 F.P.C. 666 (1976), in which FERC's predecessor, the Federal Power Commission, ruled that Section 202(b) requires that a prospective purchaser of power under the Section be "*currently* engaged in the transmission or sale of

5

electric energy." See id. at 667 (emphasis added). From this interpretation EPE extrapolates that a party seeking an order under Section 202(b) must be currently engaged in the transmission or sale of electric energy within the precise geographic area that it seeks to serve under the order. We do not read the statute to impose such a geographic limitation, nor has FERC previously interpreted the statute to impose such a limitation. Accordingly, FERC's refusal to read such a requirement into Section 202(b) is consistent with the unambiguous wording of the statute and passes Chevron scrutiny.

The plain language of the statute indicates that "any person engaged in the transmission or sale of electric energy" may seek an order under its provisions. See City of Paris, Kentucky v. Federal Power Comm'n, 399 F.2d 983, 984 (D.C. Cir. 1968) ("It is clear that under [Section 202(b)] the Commission can order a public utility to sell its energy to, or exchange its energy with, any person engaged in transmission or sale of electric energy."). The City is currently transmitting and selling power to industrial customers outside of Las Cruces. Accordingly, the City is eligible to seek a sale order under section 202(b).

EPE next argues that FERC's authority to act "in the public interest" in issuing orders under section 202(b) is limited strictly to orders mandating interconnection of facilities and does not apply to orders requiring sales of electricity. Again, looking to the plain language of the statute we see no such limitation upon

6

FERC's authority.  The language in question permits FERC to act in the public interest "to establish physical connection of its transmission facilities with the facilities of one or more other persons engaged in the transmission or sale of electric energy, to sell energy to or exchange energy with such persons."  16 U.S.C. § 824a(b). As the First Circuit indicated in New England Power Co. v. Federal Power Comm'n, 349 F.2d 258 (1st Cir. 1965):

> The plain language of [Section 202(b)] is in the disjunctive, and we think it must be read as empowering the Commission to direct a public utility to establish a physical connection of its transmission facilities with the facilities of another entity engaged in the transmission or sale of electric energy, or to order the utility to sell energy to or exchange energy with such other entity, or to do both, as the public interest requires.

Id. at 263.  EPE's involved recitation of the Act's legislative history does nothing to alter the disjunctive wording of Congress' final version of the section.  The unambiguous wording of section 202(b) permits FERC to order interconnection and/or the sale or exchange of energy between qualified entities as long as to do so is in the public interest and does not run afoul of any of the other prohibitions enumerated in the section.  Accordingly, FERC's ruling to this effect passes Chevron scrutiny.

As both of FERC's statutory interpretations addressed above pass Chevron muster, we AFFIRM both contested orders to the extent that they are consistent with this holding.

II.  FERC's Consideration of EPE's Evidence

7

Although the Act authorizes FERC to order EPE to sell power to the City if doing so is in the public interest, we believe that FERC improperly refused to take into consideration evidence that the potential condemnation might impair EPE's ability to serve its other customers. During FERC's summary proceedings, EPE submitted evidence indicating that the City's planned condemnation and severance could impair EPE's ability to render adequate service to its customers outside of Las Cruces and could impose an undue burden upon EPE. In the Order, FERC reasoned that EPE's evidence concerning potential adverse effects of condemnation was not relevant insofar as the proper forum for addressing such concerns is the condemnation proceeding. See Order, 86 FERC ¶ 61,253. In denying EPE's motion for rehearing, FERC reiterated its irrelevance argument. See Rehearing Order, 87 FERC at ¶ 61,874. We believe that this failure to address adequately EPE's reliability concerns was arbitrary and capricious.

Even if an agency's interpretation meets Chevron muster, the Administrative Procedure Act (the "APA") authorizes us to reverse an agency's actions if it "acted arbitrarily or capriciously in adopting its interpretation by failing to give a reasonable explanation for how it reached its decision." Public Util. Counsel, 183 F.3d at 410 (citations omitted). This includes a determination of "'whether each of the order's essential elements is supported by substantial evidence', and whether the agency 'abused or exceeded its authority.'" Gulf States Util. Co. v.

8

<u>Federal Energy Regulatory Comm'n</u>, 1 F.3d 288, 291 (5th Cir. 1993) <u>quoting</u> <u>In re Permian Basin Area Rate Cases</u>, 390 U.S. 747, 790, 792, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968). Moreover, this inquiry requires us to evaluate whether or not the agency has given "reasoned consideration" to the evidence before it. <u>See</u> <u>Gulf States</u>, 1 F.3d at 291 <u>quoting</u> <u>Borden, Inc. v. Federal Energy Regulatory Comm'n</u>, 855 F.2d 254, 258, 259 (5th Cir. 1988).

In the Order, FERC listed three reasons why granting the City's request was in the public interest: "[EPE] will be fully and fairly compensated, there will be no undue burden on [EPE] or impairment of its ability to provide adequate service to its other customers, and the service we are ordering is only temporary to allow Las Cruces to complete its extensive efforts . . . to arrange an alternative source of supply." Order, 86 FERC at ¶ 61,253. In the Rehearing Order, FERC added that the City's ultimate objective of reducing the cost of electricity for its citizens when balanced against the adequate compensation afforded to EPE yields a fourth reason why this sale is in the public interest. <u>See</u> Rehearing Order, 87 FERC at 61,874. Indeed, FERC goes so far as to say that these potential cost savings are in the public interest regardless whether subsequent developments may prevent the achievement of this objective. <u>See</u> <u>id.</u>

For FERC to insist that considering the potential disadvantages of condemnation is premature while at the same time citing to the potential advantages of condemnation is hardly

9

"reasoned consideration" of the evidence before it. FERC's insistence that there will be no undue burden on EPE or impairment of its services to other customers rests on its assertion that these effects would occur, if at all, only as a result of the City leaving EPE's power supply system altogether. According to FERC, because the Order does not immediately result in such severance it does not pose a risk to EPE's ability to serve its customers. Such purposeful naivete does a grave disservice to EPE. The City has been clear in noting its intention to condemn EPE's facilities in Las Cruces and sever them from the remainder of EPE's system. The Order acknowledges that this is the City's objective. See Order, 86 FERC at ¶ 61,252. Condemnation and severance are likely results of the Order making the potential impact of these proceedings quite relevant to FERC's determination.

The City is seeking a firm source of power for no other reason than to proceed with its condemnation of EPE's distribution facilities. To categorize facilitating the condemnation as being "in the public interest" necessarily implies that the condemnation is in the public interest. Moreover, the City's objective of reducing the costs of its citizens' power is inextricably linked to the results of the condemnation proceeding. The City cannot distribute the purchased energy without condemning EPE's distribution network. Thus FERC bases its decision upon a result that could come about only through condemnation. We cannot allow FERC to rely on the potential advantages of condemnation to bolster

10

its public interest findings while ignoring the potential disadvantages of the same proceedings.

At the very least, EPE's evidence concerning the effects of condemnation and severance could create a genuine issue of material fact concerning whether or not the Order is in the public interest and/or otherwise inconsistent with section 202(b). Under FERC's rules this would require more than the summary proceedings FERC engaged in here. See 18 C.F.R. § 385.217(b). FERC's refusal to consider EPE's evidence on this matter leaves the question open as to the existence of an issue of material fact warranting an evidentiary hearing. As we are not charged with determining what constitutes a issue of material fact in this context, we leave it to FERC to decide whether or not a hearing is appropriate based upon the parties' submissions.

Ultimately, FERC's arbitrary refusal to evaluate relevant evidence concerning potential reliability problems resulting from the City's proposed condemnation of EPE's distribution facilities violates both the APA and possibly FERC's own procedural rules. Accordingly, we REVERSE both orders to the extent that they are inconsistent with this opinion and REMAND for further proceedings consistent with this opinion.

AFFIRMED in part, REVERSED in part, and REMANDED.

11