**The CITY OF KAUKAUNA, WISCONSIN, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Wisconsin Michigan Power Co., Intervenor.**

**No. 76–1561.**

United States Court of Appeals, District of Columbia Circuit.

Argued June 14, 1977.

Decided July 24, 1978.

J. LeRoy Thilly, Madison, Wis., with whom Richard L. Olson, Madison, Wis., was on the brief, for petitioner.

John J. Lahey, Atty., Federal Power Commission, Washington, D. C., with whom Drexel D. Journey, Gen. Counsel, Robert W. Perdue, Deputy Gen. Counsel, and Allan Abbot Tuttle, Sol., Federal Power Commission, Washington, D. C., were on the brief, for respondent. Philip R. Telleen, Atty., Federal Power Commission, Washington, D. C., also entered an appearance for respondent.

George F. Bruder, Washington, D. C., with whom J. Michel Marcoux, Washington, D. C., was on the brief, for intervenor.

Before BAZELON and ROBINSON, Circuit Judges, and RONALD N. DAVIES,* Senior United States District Judge for the District of North Dakota.

Opinion for the Court filed by SPOTTSWOOD W. ROBINSON, III, Circuit Judge.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

The City of Kaukauna, Wisconsin, challenges orders issued by the Federal Power Commission[1] in a contest over an increase sought by Wisconsin Michigan Power Company[2] in the rate chargeable for electric power sold at wholesale to the City pursu-

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

1. The powers and duties of the Federal Power Commission were transferred to the Federal Energy Regulatory Commission as of October 1, 1977. Department of Energy Organization Act, §§ 401–407, 705(c), 42 U.S.C.A. §§ 7171–7177, 7295(c) (West Supp.1977). Because the events relevant to this litigation transpired before that date, we will continue herein to refer to the Federal Power Commission.

2. Wisconsin Michigan, a subsidiary of Wisconsin Electric Power Company, is a public utility regulated under the Federal Power Act, § 201(e), 16 U.S.C. § 824(e)(1976).

ant to a preexisting service agreement.[3] One of the orders eliminated *Mobile-Sierra* issues [4] from consideration in the proceeding, thus rejecting the City's claim that the agreement in terms bans effectuation, even temporarily, of rate elevations before they have run the full gamut of administrative proceedings and any ensuing judicial review.[5] The other order denied rehearing of that ruling,[6] thereby sanctioning once again provisional operation of the requested rate upon termination of a previously-decreed three-month period of suspension.[7]

The sole issue thus emerging is whether the Commission was correct in its view that the service agreement interposed no obstacle to collection of the proposed rate increase prior to the time at which its propriety is ultimately laid to rest by either the Commission or the courts. We concur in the City's interpretation of the parties' contract and accordingly reverse.

## I

■ Section 5.11 of the service agreement between Wisconsin Michigan and the City specifies relevantly:

> It is expressly understood and agreed that the rate or charge for electric service

**3.** The City operates a facility retailing electric power to its residents. It generates part of its requirements and purchases the rest at wholesale from Wisconsin Michigan pursuant to a 1968 agreement, to which the City of Menasha, Wisconsin—not a litigant here—is also a party.

**4.** See *United Gas Pipe Line Co. v. Mobile Gas Serv. Corp.*, 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956); *FPC v. Sierra Pac. Power Co.*, 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388 (1956). For additional discussions of the *Mobile-Sierra* doctrine, see the cases cited *infra* note 14.

**5.** *Wisconsin Mich. Power Co.*, F.P.C. No. ER 76–399 (Mar. 1, 1976) (order granting intervention and denying motion for five-month suspension) (unreported), Joint Appendix (J. App.) 16. On that score the Commission said merely:
> We shall . . . limit this proceeding so as to exclude consideration of the *Mobile-Sierra* issue. After having reviewed Wisconsin Michigan's contract with Kaukauna and Menasha, we find that the contract provides for unilateral rate increase filing by the Company with the Federal Power Commission.

*Id.*, J. App. 18 (footnotes omitted).

**6.** *Wisconsin Elec. Power Co.*, F.P.C. Nos. ER 76–303 & ER 76–399 (April 30, 1976) (order granting in part and denying in part petition for rehearing) (unreported), J. App. 25. Again the Commission's discussion of the *Mobile-Sierra* problem was cryptic:
> Kaukauna contends the emphasized portion of the contract [see text *infra* at note 9] implies that Wisconsin Michigan has contractually agreed to a suspension of proposed rate increases until ultimate Commission approval or, if applicable, the completion of judicial review. We believe Kaukauna's interpretation of the second sentence of Section 5.11 of its contract to be erroneous. The first sentence of Section 5.11 entitled Wisconsin Michigan's consin [*sic*] to file for a

rate increase under Section 205, the Commission may suspend the operation of a proposed rate, but not for a period longer than five months beyond the proposed effective date. If proceedings regarding the proposed rate increase have not been concluded at the expiration of the five months, the proposed rate increase may go into effect.

*Id.*, J. App. 29.

**7.** Section 205(c) of the Federal Power Act, 16 U.S.C. § 824d(c) (1976), requires regulated public electric utilities to file with the Commission all rates, and all contracts affecting rates, pertaining to sales within the Commission's jurisdiction. Proposed changes in previously-filed rates must be submitted at least 30 days before they are to go into effect. *Id.* § 205(d), 16 U.S.C. § 824d(d) (1976). The Commission may suspend operation of a new rate for not more than five months pending investigation into its reasonableness. *Id.* §. 205(e), 16 U.S.C. § 824d(e) (1976). And
> [i]f the proceeding has not been concluded and an order made at the expiration of such five months, the proposed change of rate . . . shall go into effect at the end of such period, but in case of a proposed increased rate or charge, the Commission may by order require the interested public utility or public utilities to keep accurate account in detail of all amounts received by reason of such increase, specifying by whom and in whose behalf such amounts are paid, and upon completion of the hearing and decision may by further order require such public utility or public utilities to refund, with interest, to the persons in whose behalf such amounts were paid, such portion of such increased rates or charges as by its decision shall be found not justified.

*Id.* In the instant litigation, the Commission initially suspended Wisconsin Michigan's new rate for three months and, at the expiration thereof, imposed a refunding requirement.

supplied hereunder (including the classification of service or any rule or regulation relating to such rate or charge) may be changed from time to time during the term of his agreement, and that, accordingly, after giving to Kaukauna-Menasha [8] prior notice thereof not less than the time prescribed by any applicable statute or regulation, the Company (Wisconsin Michigan) may file new or changed rate schedules with the Federal Power Commission pursuant to Section 205 of the Federal Power Act and the regulations thereunder, or with such other regulatory agency as may then have jurisdiction. Kaukauna-Menasha, subject to the retention of its rights of due process, including the right to participate in any rate proceeding growing out of such filing of a new rate or charge, and to participate in any applicable court proceeding for review of a regulatory determination thereon, *agrees to accept such new or changed rates as are ultimately made effective through such proceedings and review.*[9]

The Commission construed these stipulations as a contractual authorization of unilateral rate changes through the mechanism prescribed by Section 205 of the Federal Power Act,[10] which provides that the new rate proposed shall go into effect upon expiration of a maximum five-month suspension in the event that the administrative decision on its propriety has not been reached in the interim.[11] The City, relying on the highlighted language of Section 5.11 of the agreement, contends that although the parties contemplated that rate modifications might be initiated by filings under Section 205 of the Act, no increase can properly become operative until final approval, either by the Commission or the courts. We think the City's reading of Section 5.11 is eminently sound.

■ The Supreme Court's decisions in *Mobile* [12] and *Sierra* [13] establish beyond peradventure that efforts to alter rates are governed by the parties' contracts, subject only to the overriding power of the Commission to readjust contract rates in the public interest.[14] And as we ourselves have held, the parties may extend the protection of the contract to the mechanics of rate change as well as to the permissibility of any change at all.[15] Section 205 purports to dictate not *when* contractually-authorized rate increases *can* be made operative but only that they *cannot* become operative at any time without compliance with the statutory procedure.[16] Beyond minimum statutory constraints, the effective date of any consensual rate hike is a matter committed to agreement by the parties.

■ Thus Section 205's provision for automatic effectuation of rate increases when no Commission-ordered suspension period is extant serves simply to govern implementation of new rates absent private agreement and does not curb the parties' freedom contractually to erect further barriers to the achievement of the change. And though the Commission may not withhold a supplier's new rate beyond the maximum statutory suspension period, the Act in no way

**8.** See note 3 *supra.*

**9.** J. App. 30–31 (emphasis supplied).

**10.** 16 U.S.C. § 824d (1976). See note 7 *supra.*

**11.** See note 7 *supra.*

**12.** *United Gas Pipe Line Co. v. Mobile Gas Serv. Corp., supra* note 4.

**13.** *FPC v. Sierra Pac. Power Co., supra* note 4.

**14.** See, *e. g., United Gas Pipe Line Co. v. Mobile Gas Serv. Corp., supra* note 4, 350 U.S. at 344, 76 S.Ct. at 381, 100 L.Ed. at 386; *FPC v. Sierra Pac. Power Co., supra* note 4, 350 U.S. at 353–355, 76 S.Ct. at 371–372, 100 L.Ed. at 394; *Appalachian Power Co. v. FPC,* 174 U.S.App. D.C. 100, 103 n. 13, 529 F.2d 342, 345 n. 13, *cert. denied,* 429 U.S. 816, 97 S.Ct. 58, 50 L.Ed.2d 76 (1976); *Richmond Power & Light v. FPC,* 156 U.S.App.D.C. 315, 322–323, 481 F.2d 490, 497–498, *cert. denied,* 414 U.S. 1068, 94 S.Ct. 578, 38 L.Ed.2d 473 (1973).

**15.** *Richmond Power & Light v. FPC, supra* note 14, 156 U.S.App.D.C. at 322, 481 F.2d at 497.

**16.** *Cf. United Gas Pipe Line Co. v. Mobile Gas Serv. Corp., supra* note 4, 350 U.S. at 339, 76 S.Ct. at 378, 100 L.Ed. at 384 (interpreting substantially identical provisions of Natural Gas Act, 15 U.S.C. §§ 717 *et seq.* (1976).

prevents the supplier from agreeing to defer its operation until later. A bare contractual reference to Section 205 signifies, then, no more than an intention to adopt at minimum the procedural requirements imposed by that section. In sum, while an unamplified advertence to Section 205 would not authorize postponement of an increase beyond the suspension period, the parties remain at liberty to supplement the obligations attending Section 205 by appropriate language in their contracts.

## II

Examination of Section 5.11 of the Wisconsin Michigan-Kaukauna service agreement readily discloses a clear purpose to delay implementation of any rate elevation until the Commission has finally approved it and any judicial review has drawn to a conclusion. The parties share the view that without limiting words the agreement would necessitate effectuation of the new rate upon termination of the Commission's three-month suspension, notwithstanding the lack at that time of an administrative evaluation of its reasonableness. But the fact is that Section 5.11 does incorporate a special restriction—the covenant that the City will "accept such new or changed rates as are ultimately made effective through [Commission] proceedings and [judicial] review." [17]

The Commission's treatment of the City's *Mobile-Sierra* claim hardly does justice to this vital stipulation. After reciting the City's position and paraphrasing the suspension provision of Section 205, the Commission perfunctorily concluded that the *Mobile-Sierra* doctrine was not implicated in this case.[18] Wisconsin Michigan, by contrast, attempts to impart its own interpretation, arguing that Section 5.11 does no more than "express[ ] the parties' agreement that the contract would neither bar the City from contesting any rate changes nor aid it in resisting the results of any such contest." [19] The significance thus adduced is merely illusory, however, for the City would possess the rights that Wisconsin Michigan attributes to Section 5.11 even if it had not been inserted into their contract.

To be sure, Section 5.11 confers upon Wisconsin Michigan the prerogative of altering rates during the contract term, and leave to resort to Section 205 of the Act in any such endeavor.[20] But Section 5.11 is also explicit in its specification of the rate modifications that the contracting parties bound themselves to honor. They are only "such new or changed rates as are ultimately made effective through" administrative and judicial channels; [21] put another way, the substituted rates must "*ultimately* [be] made effective" through those processes before a duty to pay arises. This language obviously was designed to protect the City against the exaction of higher rates unless and until their propriety is favorably and finally resolved. The language plainly negates any obligation to subscribe temporarily to new rates pending full adjudication, even subject to refund of any portion deemed unlawful. With a provision so unambiguous in its meaning and objective, we have no occasion to look to anything else.[22]

We are mindful that deference is to be accorded the Commission's contract interpretations when amply supported by the facts and the law,[23] but the decisions complained of do not comport with that stan-

17. See text *supra* at note 9.

18. See note 6 *supra*. See also note 5 *supra*.

19. Brief for Intervenor at 6.

20. See text *supra* at note 9.

21. See text *supra* at note 9.

22. See *Appalachian Power Co. v. FPC, supra* note 14, 174 U.S.App.D.C. at 106, 529 F.2d at 348.

23. See *Gulf State Utils. Co. v. FPC,* 171 U.S. App.D.C. 57, 64, 518 F.2d 450, 457 (1975); *cf. Sam Rayburn Dam Elec. Coop. v. FPC,* 169 U.S.App.D.C. 281, 286, 515 F.2d 998, 1003 (1975), *cert. denied,* 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976) (approaching Commission's interpretation with deference but finally rejecting it).

dard. Placing unwarranted emphasis upon Section 5.11's reference to Section 205, the Commission virtually ignored its most critical stipulation, which completely discredits the construction that the Commission gave.[24]

The orders under review are accordingly reversed and the case is remanded. The Commission will direct Wisconsin Michigan to refund promptly to the City all revenues attributable to the amount of the proposed increase collected prior to final approval.

*So ordered.*