The CITY OF PIQUA, OHIO, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent,

Dayton Power and Light Company, Intervenor.

No. 78–1487.

United States Court of Appeals, District of Columbia Circuit.

Argued April 30, 1979.

Decided Sept. 21, 1979.

Alan J. Roth, Washington, D. C., with whom Sandra J. Strebel and Thomas N. McHugh, Jr., Washington, D. C., were on brief, for petitioner.

Lynn N. Hargis, Asst. Gen. Counsel, Federal Energy Regulatory Commission, Washington, D. C., with whom Howard E. Shapiro, Sol., Federal Energy Regulatory Commission, Washington, D. C., was on brief, for respondent.

J. Richard Tiano, Richard M. Merriman, Robert S. Waters, Washington, D. C., and M. A. Gribler, Dayton, Ohio, were on brief, for intervenor.

Before TAMM and MacKINNON, Circuit Judges, and AUBREY E. ROBINSON, Jr.,* United States District Judge for the District of Columbia.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

In this case, we review two orders of the Federal Energy Regulatory Commission (FERC or Commission): one allowing a rate increase, for good cause shown, to take effect prior to filing with the Commission,[1] and the other reversing the Commission's rejection of a filing for a firm power rate increase.[2] We affirm both orders as authorized by statute and supported by substantial evidence.

## I.

Intervenor Dayton Power and Light Company (DP&L) supplied partial requirements electric service to petitioner City of Piqua, Ohio (Piqua or City) under an Interconnection Agreement (Agreement). The Agreement was to terminate on May 9, 1977. One week prior to that date, Piqua and DP&L submitted to the Piqua City Commission, as required by Ohio law, a negotiated modification to the Agreement increasing rates to be charged for various kinds of electric service.[3] DP&L, however, delayed its filing with the Commission while awaiting action by the Piqua City Commission. On July 18, 1977, the City Commission approved the negotiated contract "for the term of May 10, 1977 to March 10, 1978" with two additional changes: (1) extension of the Agreement to March 10, 1978, for municipal administrative reasons; and (2) continuation of the 5000 kilowatt (kw) firm power contract demand from May 10 through June 19, 1977, with an increase to 8000 kw from June 20, 1977, through March 10, 1978.

On August 5, 1977, DP&L submitted the new contract to the Commission for filing, stating that the Agreement had been modified to "remain in effect from May 10, 1977 through March 10, 1978" and requesting the Commission to "waive any requirements not already complied with under Section 35.13 of the Commission's Regulations and permit the modification to become effective on May 10, 1977." *Dayton Power & Light Co.,* Docket No. ER77–546, DP&L Transmittal Letter from R.E. McCormick to Kenneth F. Plumb, Secretary, FPC, at 1, 3 (Aug. 5, 1977). By October 14, DP&L had cured deficiencies in its filing, as requested by the Commission. The Commission issued public notice of the filing on November 4, 1977.

One week later, the Commission issued an order accepting for filing Schedules B, C, and D of the proposed rate changes. The Commission, due to DP&L's delay in filing from May to August, denied its request for waiver of filing requirements and gave the schedules prospective application only. The Commission also rejected Schedule A as unsupported by appropriate cost data. DP&L

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. *Dayton Power & Light Co.,* Docket No. ER77–546, Order Denying Rehearing and Amending Prior Order (Apr. 3, 1978).

2. *Id.,* Order Granting Rehearing and Correcting Prior Order (Jan. 18, 1978).

3. Revised Schedule A applies to firm power service, Revised Schedule B to short term power service, Revised Schedule C to emergency service, and Revised Schedule D to economy energy service.

sought rehearing of the Commission's refusal to waive the notice requirement, explaining that the Piqua City Commission's modification and review of the Agreement had delayed the rate change filing. DP&L further requested the Commission to reverse its rejection of Schedule A, offering cost data already before the Commission in another proceeding as justification for the increase.

On January 18, 1978, the Commission issued the first of the orders under review and reversed its rejection of Schedule A, finding that DP&L's submittal of cost data from another proceeding sufficiently justified the proposed firm power rates to Piqua. The Commission also found good cause for waiver of the prior notice requirement, in accordance with section 205(d) of the Federal Power Act (Act), 16 U.S.C. § 824d(d) (1976)[4] and section 35.11 of the Commission regulations.[5] In finding good cause for waiver, the Commission relied on three factors: (1) the delay due to Ohio statutory procedure requiring Piqua to submit the contract to its City Commission for approval; (2) Piqua's explicit agreement to a May 10, 1977, effective date for rate increases; and (3) the lack of objection to the May 10 date from any party at the time of DP&L's rate filing. Thus the Commission approved an effective date of May 10, 1977, for Schedules B, C, and D and an effective date of May 11, 1977, for Schedule A.

On April 3, 1978, the Commission issued the second order under review and denied rehearing. It rejected Piqua's argument that the January 18 order was unauthorized retroactive ratemaking and an abuse of discretion by the Commission.[6] This petition for review followed.

## II.

Piqua challenges the Commission's assignment of a retroactive date to the rate increases as: (1) unauthorized by statute; (2) prohibited by the policy against retroactive ratemaking; and (3) unsupported by substantial evidence.

### A. Statutory Authorization

The Commission relies upon section 205(d) of the Act as statutory authority for the Commission to allow the rates to take effect without requiring advance notice. As the Commission emphasizes, the Act requires that no rate may be changed without thirty days' notice "[u]nless the Commission otherwise orders." 16 U.S.C. § 824d(d). Fur-

---

**4.** Section 205(d) of the Federal Power Act (Act), 16 U.S.C. § 824d(d) (1976), provides:

Unless the Commission otherwise orders, no change shall be made by any public utility in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after thirty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. The Commission, for good cause shown, may allow changes to take effect without requiring the thirty days' notice herein provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published.

**5.** Section 35.11 of the Commission regulations provides:

Upon application and for good cause shown, the Commission may, by order, provide that a rate schedule, or part thereof, shall be effective as of a date prior to the date of filing or prior to the date the rate schedule would become effective in accordance with these rules. Application for waiver of the prior notice requirement shall show (a) how and the extent to which the filing public utility and purchaser(s) under such rate schedule, or part thereof, would be affected if the notice requirement is not waived, and (b) the effects of the waiver, if granted, upon purchasers under other rate schedules. The filing public utility requesting such waiver of notice shall serve copies of its request therefor upon all purchasers. 18 C.F.R. § 35.11 (1978).

**6.** However, the Commission noted the possible financial burden to Piqua from payment of the rate changes in one lump sum payment and accordingly revised its January 18 order to allow Piqua to make twelve monthly payments with 6% interest. *Dayton Power & Light Co.*, Docket No. ER77–546, Order Denying Rehearing and Amending Prior Order, at 10 (Apr. 3, 1978).

ther, the Act provides that the "Commission, for good cause shown, may allow changes to take effect *without requiring the thirty days' notice herein provided for* . . . ." *Id.* (emphasis added). Relying on this language, the Commission concludes that the Act gives it discretion, for good cause shown, to waive the prior notice requirement.

Piqua contends that Congress intended section 205(d) to be read narrowly. According to Piqua, the provision only allows the Commission to shorten the thirty days' notice period and to limit rate changes to a post-filing effective date. As additional support for its contention, Piqua offers a lexicographic analysis of the statute. Piqua particularly emphasizes that congressional use of "shall" and "to be" in section 205(d) conclusively denoted futurity, thus authorizing only prospective rate changes.

Such a grammatical nicety is neither persuasive nor dispositive.[7] Moreover, Piqua's literal interpretation renders the statute too restrictive. The language of section 205(d) is certainly not so clear or unambiguous as to bind us to give effect to the literal meaning. *See Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917). Therefore, we must consider the policies underlying the Act, for the "intention prevails over the letter, and the letter must if possible be read so as to conform to the spirit of the Act." 2A *Sutherland Statutory Construction* § 46.07, at 65 (4th ed. 1973). Due consideration of the agency interpretation[8] of section 205(d) is also appropriate.[9]

The primary purpose of section 205(d) is to notify the Commission of changes in rates and schedules between parties to a utilities contract. *United Gas Pipe Line Co. v. Mobile Gas Service Corp.,* 350 U.S. 332, 339–40, 76 S.Ct. 373, 100 L.Ed. 373 (1956).[10] A change in rates cannot take place without first filing notice with the Commission. Once notice has been filed, the Commission can investigate and review the rate change to ensure that it serves the public interest. The effective date of the rate change is left to the discretion of the Commission. As this court has stated, "[s]ection 205 purports to dictate not *when* contractually-authorized rate increases *can* be made operative but only that they *cannot* become operative at any time without compliance with the statutory procedure." *City of Kaukauna v. FERC,* 189 U.S.App.D.C. 215, 218, 581 F.2d 993, 996 (1978) (footnote omitted).

We must also consider the policies underlying section 205(d). One such policy is to recognize private contractual arrangements between parties to a utility agreement.[11]

---

7. *Compare Buckley v. Valeo,* 171 U.S.App.D.C. 172, 174, 519 F.2d 821, 893 n.191 (1975) (use of "shall" can either be mandatory or directory, depending on its context and legislative intent), *aff'd in part and rev'd in part,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), *with Boyden v. Commissioner of Patents,* 142 U.S.App.D.C. 351, 353 n.3, 441 F.2d 1041, 1043 n.3 (Cir.) ("shall" is the language of command), *cert. denied,* 404 U.S. 842, 92 S.Ct. 139, 30 L.Ed.2d 77 (1971).

8. *See United States v. Consumer Life Ins. Co.,* 430 U.S. 725, 751–52, 97 S.Ct. 1440, 1454, 52 L.Ed.2d 4 (1977) ("It is well established that the consistent construction of a statute 'by the agency charged with its enforcement is entitled to great deference by the courts.'" (citations omitted)).

9. *See United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 849, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975); *United States v. American Trucking Ass'ns,* 310 U.S. 534, 542-44, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940).

10. *United Gas Pipe Line Co. v. Mobile Gas Serv. Corp.,* 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956), involved the Natural Gas Act, 15 U.S.C. §§ 717–717w (1976). "[T]he relevant provisions of [the Natural Gas Act] 'are in all material respects substantially identical to the equivalent provisions of the' Federal Power Act." *Appalachian Power Co. v. FPC,* 174 U.S. App.D.C. 100, 102, 529 F.2d 342, 344 (1976) (quoting *FPC v. Sierra Pac. Power Co.,* 350 U.S. 348, 353, 76 S.Ct. 368, 100 L.Ed. 1471 (1956)).

11. *See Hearings on H.R. 11662 Before a Subcomm. of the House Comm. on Interstate and Foreign Commerce,* 74th Cong., 2d Sess. 28–29 (1936) (noting private companies' role in setting and effecting rates under earlier proposed version of the Natural Gas Act). *See also Papago Tribal Util. Auth. v. FERC,* 197 U.S.App. D.C. ——, ——, 610 F.2d 914, 924 (1979) (recognizing "party-ratemaking" under § 205(d)); *City of Oglesby v. FERC,* No. 76–1585, slip. op. at 11 (D.C. Cir. Aug. 21, 1979) (acknowledging the preeminent role of the

The Supreme Court, discussing this issue, declared, "[W]e should bear in mind that [the Act] evinces no purpose to abrogate private rate contracts as such. To the contrary, by requiring contracts to be filed with the Commission, the Act expressly recognizes that rates to particular customers may be set by individual contracts." *United Gas Pipe Line Co. v. Mobile Gas Service Corp.*, 350 U.S. at 338, 76 S.Ct. at 378. Deference to the parties' contractual arrangements, according to the Court, does not impair the regulatory powers of the Commission. The Commission at any time can conduct hearings on a contract rate and modify it if unreasonable.[12]

The Commission's interpretation of section 205(d), authorizing rates without requiring advance notice, for good cause shown, furthers these policies. DP&L submitted the rates for review and thereby provided the public an opportunity to comment. The Commission reviewed and approved the schedule rates, thus ensuring that the public would not be overcharged and "enhanc[ing] the stability of electric supply arrangements in the future between Piqua and Dayton." *Dayton Power & Light Co.*, Docket No. ER77–546, Order Denying Rehearing and Amending Prior Order, at 8 (Apr. 3, 1978). Moreover, the Commission, in enforcing the effective date negotiated by Piqua and DP&L, is merely honoring the intent of the parties, rather than abrogating a private rate contract. This result is consistent with the principle that, within the regulatory framework, "the effective date of any consensual rate hike is a matter committed to agreement by the

parties." *City of Kaukauna v. FERC*, 189 U.S.App.D.C. at 218, 581 F.2d at 996.

## B. *Retroactive Ratemaking*

Piqua argues the Commission's orders and interpretation of section 205(d) violate judicial precedent. According to Piqua, courts have read the Act to prohibit retroactive ratemakings.[13] In essence, the rule against retroactivity is "a cardinal principle of ratemaking[:] a utility may not set rates to recoup past losses, nor may the Commission prescribe rates on that principle." *Nader v. FCC*, 172 U.S.App.D.C. 1, 21, 520 F.2d 182, 202 (1975). If the Commission finds rates or charges unreasonable, it may only substitute reasonable rates "to be *thereafter* observed and in force . . . ." 16 U.S.C. § 824e(a) (1976) (emphasis added). *See Public Service Co. of New Hampshire v. FERC*, 195 U.S.App.D.C. 130, 143, 600 F.2d 944, 957 (1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 520, 62 L.Ed.2d 419 (1979).[14] The retroactive ratemaking rule thus bars utility refunds for past excessive rates, or the Commission's retroactive substitution of an unreasonably high or low rate with a just and reasonable rate.

The present situation is immediately distinguishable. In this case, two parties agreed on new rate schedules and on the effective date for the new contract. The negotiated rate change was not retroactive; it was prospective from the date of the contract. Filing under section 205(d) allowed the Commission to review the agreement to ensure its reasonableness. Such review does not, when good cause is shown, however, preclude enforcing the contract provision as of the date specified therein.

---

contracting parties' intent in rate-increase disputes).

**12.** *See United Gas Pipe Line Co. v. Mobile Gas Serv. Corp.*, 350 U.S. at 344–45, 76 S.Ct. 373, *cited in Richmond Power & Light v. FPC*, 156 U.S.App.D.C. 315, 317, 481 F.2d 490, 492 (1973).

**13.** *See, e. g., Sunray Mid-Continent Oil Co. v. FPC*, 364 U.S. 137, 153, 80 S.Ct. 1392, 4 L.Ed.2d 1623 (1960) (the Natural Gas Act); *Montana-Dakota Util. Co. v. Northwestern Pub. Serv.*

*Co.*, 341 U.S. 246, 254, 71 S.Ct. 692, 95 L.Ed. 912 (1951); *Indiana & Michigan Elec. Co. v. FPC*, 163 U.S.App.D.C. 334, 342, 502 F.2d 336, 344 (1974), *cert. denied*, 420 U.S. 946, 95 S.Ct. 1326, 43 L.Ed.2d 424 (1975).

**14.** In that case, the electric company petitioners were dissatisfied with fixed rate tariffs that failed to recover their costs. They therefore sought to impose rate surcharges, which the Commission rejected as retroactive ratemaking.

Moreover, the Commission, in finding the Agreement reasonable, did not retroactively substitute a rate; it merely approved the rate change and effective date agreed upon by the parties.

As part of its retroactivity argument, Piqua also challenges the waiver as inconsistent with the "filed rate doctrine" as described in *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 251, 71 S.Ct. 692, 695, 95 L.Ed. 912 (1951): "[a utility] can claim no rate as a legal right that is other than the filed rate . . . ." This court, in discussing the doctrine, stated: "The considerations underlying the [filed rate] doctrine . . . are preservation of the agency's primary jurisdiction over reasonableness of rates and the need to insure that regulated companies charge only those rates of which the agency has been made cognizant." *City of Cleveland v. FPC*, 174 U.S.App.D.C. 1, 10, 525 F.2d 845, 854 (1976). This purpose is unaffected by the Commission's waiver of the notice requirement upon good cause, thus allowing rate changes, found by the Commission to be just and reasonable, to become effective on the date agreed by the parties.

We have considered the agency's interpretation of section 205(d) in light of the Act's policy and the practical consequences of the proposed construction. We find that section 205(d) statutorily authorizes the Commission's waiver of the prior notice requirement upon a showing of good cause.

C. *Substantial Evidence of Good Cause*

The Commission found good cause for waiver of the prior notice requirement.

First, the Commission noted that the City Commission's resolution process and continuing negotiations sought by Piqua contributed to DP&L's delay in filing the rate changes for Commission approval prior to the agreed-upon effective date. Second, Piqua explicitly agreed to the May 10 effective date. The City Commission's approval of the new contract on June 6, 1977, noted the May 10 effective date, as did its July 18 resolution. In light of Piqua's clear agreement to the May 10 effective date, no reason existed for DP&L to file unilaterally before final modification of the agreement had been made. Finally, Piqua neither petitioned to intervene to protest DP&L's request for waiver nor accepted the Commission's invitation in its November 16, 1977 order to comment and protest.

### III.

We hold that statutory authority and substantial evidence support the Commission's waiver of the notice requirement, for good cause shown, in the case under review.[15] Accordingly, the Commission's January 18 and April 3, 1978, orders are

*Affirmed.*

---

**15.** Because we have determined that statutory authority and substantial evidence support the Commission's findings of good cause to waive the prior notice requirements, we need not consider Piqua's equitable challenge to the Commission's acceptance of Schedule A as effective on May 11, 1977.