917 F.2d 600
 286 U.S.App.D.C. 378
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
BELLSOUTH CORPORATION, et al., Petitioners,
v.
FEDERAL COMMUNICATIONS COMMISSION, Respondent.
 Nos. 89-1380, 89-1406.
 United States Court of Appeals, District of Columbia Circuit.
 Oct. 30, 1990.
 
 Before MIKVA, SILBERMAN and RANDOLPH, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was considered on the record on petition for review of an order of the Federal Communications Commission and on the briefs filed by the parties and arguments by counsel. The issues have been accorded full consideration by the court and occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the petition for review is denied.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 4
 Petitioners (BellSouth and NYNEX) are local exchange companies ("LECs") seeking review of an FCC Order requiring refunds of over $8 million for overcharges in their 1985 access tariff filings associated with amounts charged to interexchange carriers for presubscription misassignments and minimum monthly usage charges ("MMUCs"). Petitioners assail the Commission's imposition of a refund order without having first issued an accounting order as inconsistent with Sec. 204(a) of the Communications Act, 47 U.S.C. Sec. 204(a) (1988). The Commission responds that an accounting order is not a prerequisite for a refund order and that petitioners lack standing to challenge the refund of presubscription misassignment charges since they deny having made any misassignments.
 
 
 5
 In July 1985, the LECs filed their annual access tariffs with the Commission, indicating that the revised rates and terms would become effective on October 1, 1985. The FCC's Common Carrier Bureau was unable to review the extensive filings before the effective date, so in September it ordered (among other things) an investigation and five-month suspension (pursuant to Sec. 204(a)) of the revisions involving MMUCs and presubscription misassignment charges. Because the investigation was not completed before the five-month suspension expired, the revised tariff terms became effective on March 1, 1986. In June 1986, the Bureau issued a designation order reiterating its concern with the revised tariff terms and requesting additional information. In March 1987 (one full year after the tariffs went into effect), the Commission concurred with the Bureau's concerns and ordered a refund of any overcharges caused by the revised terms. See Annual 1985 Access Tariff Filing, 2 FCCRcd 1416 (as amended by Erratum, 4/7/87).
 
 
 6
 Several LECs petitioned for reconsideration, arguing that the FCC could not order refunds following a Sec. 204(a) investigation without first issuing an accounting order, a position rejected by the Commission. See Reconsideration Order, 4 FCCRcd 3959 (1989). The Commission found "ambiguity in the language of" Sec. 204(a) concerning the necessity of an accounting order as a prerequisite to ordering a refund, adding that "Congress intended accounting orders merely to 'facilitate' refunds ..., not somehow to provide an additional procedural roadblock that helps carriers prevent the agency from refunding rates that were unlawfully high." 4 FCCRcd at 3961-62.
 
 
 7
 At the outset, we hold that petitioners lack standing to challenge the order insofar as it mandates a refund of the presubscription misassignment charges. BellSouth denies facing any refund liability for these charges, and petitioners do not know whether other LECs face such refund liability either. In this respect, then, petitioners have failed to allege the necessary injury in fact to challenge the presubscription refund order. See Allen v. Wright, 468 U.S. 737, 751-54 (1984). Petitioners do, however, have standing to challenge the MMUC refund.
 
 
 8
 The provision at issue in this appeal provides in pertinent part that "the Commission may by order require the interested carrier or carriers to keep accurate account of all amounts received by reason of such charge for a new service or increased charge, specifying by whom and in whose behalf such amounts are paid, and upon completion of the hearing and decision may by further order require the interested carrier or carriers to refund [such amounts]." 47 U.S.C. Sec. 204(a)(1) (1988). This provision is phrased in permissive terms and does not unambiguously condition a refund order upon a prior accounting order. Nevertheless, petitioners insist that this language unambiguously mandates an accounting order as a prerequisite to a refund order, discounting the use of "may" as simply indicative of the fact that Sec. 204 constitutes an exception to the carrier-initiated rate concept embodied in the other sections which should be strictly construed under accepted canons of construction. However, the cases cited by petitioners to justify resort to canons of construction in order to derive unambiguous congressional intent undermine their claim. See, e.g., Michigan Citizens v. Thornburgh, 868 F.2d 1285, 1292 (D.C.Cir) (explicitly rejecting claim that the Attorney General's statutory construction was impermissible because it did not employ the canon that exemptions are to be construed narrowly), aff'd mem., 110 S.Ct. 398 (1989). We do not think that this statutory language speaks unambiguously to the specific issue before us. Cf. City of Piqua v. FERC, 610 F.2d 950, 953 (D.C.Cir.1979) (rejecting "a lexicographic analysis" of a parallel provision in the Federal Power Act as "grammatical nicety [that] is neither persuasive nor dispositive").
 
 
 9
 Having properly found ambiguity in the statute, the Commission interpreted the language as not mandating accounting orders as a prerequisite to refund orders. Under the second step of Chevron U.S.A. Inc. v. Natural Resources Defense Counsel, Inc., 467 U.S. 837, 843 (1984), we need only decide if this interpretation was reasonable and not inconsistent with ascertainable congressional intent. Both sides point to dicta in prior decisions by this court to support their positions, but no case appears to have directly addressed the question. Petitioners strenuously dispute the Commission's premise that the refund machinery is only concerned with customer interests. Instead, they contend, accounting orders are part of the delicate balance struck between carrier and customer interests in the carrier-initiated rate regime adopted by Congress, see MCI v. FCC, 561 F.2d 365, 374 (D.C.Cir.1977), cert. denied, 434 U.S. 1040 (1978), adding that without an accounting order, the LECs are denied notice of the possibility of a "retroactive" refund order and faced with a difficult burden of recalculation.
 
 
 10
 This court has previously made it clear that the Commission enjoys broad discretion in administering the refund remedy. See Las Cruces TV Cable v. FCC, 645 F.2d 1041, 1047 (D.C.Cir.1981) ("Courts reviewing agency refund decisions have shown great deference to the agency's wisdom in ordering refunds, a deference perhaps based upon the nature of their refund power...."). Furthermore, we are persuaded by the Commission's argument that the refund machinery was intended to protect customers and not carriers. Contrary to petitioners' claim, the accounting and refund power was not adopted to balance customer interests in avoiding overcharges with carrier interests protected by an accounting requirement, but instead came as part of the bargain to protect customers when carriers won a decrease in permissible suspension periods. See, e.g., Nader v. FCC, 520 F.2d 182, 197-98 (D.C.Cir.1975) (The FCC "made the revisions subject to an accounting and refund order, thus, protecting the interests of telephone users while the tariffs were being investigated"); cf. MCI v. FCC, 627 F.2d 322, 334 (D.C.Cir.1980) ("the FCC may order the carrier to keep track of the amounts customers pay to facilitate the FCC's additional power to require refunds"). We are also unmoved by petitioners' suggestion that they were denied adequate notice of potential refund liability via an accounting order. After all, as petitioners agreed at oral argument, customers could sue to gain back the overcharges whether or not an accounting order was issued. Therefore, the carriers could not have a reliance interest in an accounting notice. Cf. New England Tel. & Tel. Co. v. FCC, 826 F.2d 1101, 1110 (D.C.Cir.1987) (rejecting an analogous detrimental reliance argument), cert. denied, 109 S.Ct. 1942 (1989).
 
 
 11
 Finally, petitioners suggest (albeit in footnotes) that it was arbitrary for the FCC to depart from its practice of issuing accounting orders prior to requiring refunds under Sec. 204(a). We believe, however, that the FCC was entitled to assume that an accounting order was unnecessary because the refund order applied to a relatively small number of customers.
 
 
 12
 Therefore, the petition for review is denied.