**ILLINOIS BELL TELEPHONE COMPANY, et al., Petitioners,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents,**

**Bell Atlantic Telephone Companies, American Telephone and Telegraph Company, New York Telephone Company, et al., Southwestern Bell Telephone Company, Pacific Bell and Nevada Bell, Contel Corporation, Cincinnati Bell Telephone Co., Southern Bell Telephone & Telegraph Company, et al., Ad Hoc Telecommunications Users Committee, the Mountain States Telephone & Telegraph Co., et al., Intervenors.**

**And Consolidated Case Nos. 89–1368 and 91–1356.**

**No. 89–1365.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 14, 1992.
Decided June 16, 1992.

Alfred Winchell Whittaker, with whom John Gibson Mullan, Mary E. Cabanski, and Floyd S. Keene for Illinois Bell Telephone Co.; Gail L. Polivy and Richard McKenna for GTE Service Corp., et al.; William B. Barfield and M. Robert Sutherland for Bell South Corp., et al.; Thomas E. Taylor for Cincinnati Bell Telephone Co.; John Thorne, Michael D. Lowe, and J. Manning Lee for Bell Atlantic Telephone Companies; James P. Tuthill, Margaret deB. Brown, John W. Bogy, and Stanley J. Moore for Pacific Bell, Nevada Bell; Martin T. McCue for U.S. Telephone Ass'n; Robert B. McKenna and Lawrence E. Sarjeant for U S WEST Communications, Inc.; and Richard C. Hartgrove for Southwestern Bell Telephone Co., were on the joint brief of petitioners and supporting intervenors in Nos. 89–1365, 89–1368, and 91–1356. Thomas L. Welch, William C. Sullivan, Patricia J. Nobles, R. Frost Branon, Jr., John Paul Walters, Mark D. Mathis, and James R. Young also entered appearances, for petitioners.

John E. Ingle, Deputy Associate General Counsel, with whom Robert L. Pettit, General Counsel, and James M. Carr, Attorney, F.C.C.; and James F. Rill, Asst. Atty. Gen., and Catherine G. O'Sullivan and Andrea Limmer, Attorneys, Dept. of Justice, were on the brief, for respondents in all cases. Daniel M. Armstrong and Laurel R. Bergold, Attorneys, F.C.C., also entered appearances for respondents.

Marc E. Manly, Francine J. Berry, and Peter H. Jacoby entered appearances for intervenor American Tel. and Tel. Co.

Saul Fisher, Martin J. Silverman, and Donald W. Boecke entered appearances for intervenor New York Telephone Co., et al., in Nos. 89–1365 and 89–1368.

John C. Wohlstetter entered an appearance for intervenor Contel Corp. in Nos. 89–1365 and 89–1368.

James S. Blaszak and Charles C. Hunter entered appearances for intervenor Ad Hoc Telecommunications Users Committee in Nos. 89–1365 and 89–1368.

Dana A. Rasmussen, Lawrence E. Sarjeant, and Robert B. McKenna entered appearances for intervenors The Mountain States Tel. and Tel. Co., et al., in No. 89–1365.

Alfred Winchell Whittaker, John Gibson Mullan, Mary E. Cabanski, and Floyd S. Keene entered appearances for intervenors Ameritech Operating Companies, et al., in Nos. 89–1368 and 91–1356.

Theodore D. Frank and Vonya B. McCann entered appearances for intervenor Central Telephone Co. in No. 91–1356.

Before: BUCKLEY, SENTELLE, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Petitioning telephone carriers filed access tariffs with the Federal Communications Commission ("FCC" or "Commission"). The rates in question here were permitted by the Commission to go into effect without suspension. Thereafter, the FCC subjected these rates to further review and disallowed a portion. The Commission ordered not only a prospective reduction of the rates, but applied the new rates retroactively and ordered a refund. Petitioners seek review of the retroactive application of the new rates and rescission of the refund order, arguing that the Commission has no power to retroactively alter filed rates absent compliance with the suspension procedures of 47 U.S.C. § 204(a)(1). We agree with petitioners and allow the petition for review.

## BACKGROUND

FCC rules require local telephone companies to file access tariffs annually. *See* 47 C.F.R. §§ 69.1–.612. Petitioners are five companies (collectively "Illinois Bell" or "the companies") who complied with that requirement in October of 1987 by filing the access tariffs to be effective January 1, 1988. At that time, the FCC's Common Carrier Bureau ("Bureau") had the authority to suspend the new rates pending investigation under 47 U.S.C. § 204(a)(1). Instead, the Bureau concluded that the new tariffs did "not warrant suspension pending ... investigation," and allowed the tariffs to take effect on time. *Annual 1988 Access Tariff Filings—Phase I*, 3 F.C.C.R. 2043, 2044 ¶ 6 (1988).

Thereafter, following an investigation, the Bureau found the rates to be excessive, having determined that the companies had overestimated several cost items (conspicuously tax reserves) and declared the rates unreasonable. The Commission further ordered petitioners to make refund of approximately $30 million to AT & T, MCI, and other long distance carriers affected by the previously filed rates.

Petitioners sought reconsideration from the Commission, challenging the FCC's authority to order refunds of rates that had not been suspended or made the subject of an accounting order under § 204(a)(1). On reconsideration, the FCC set aside most of petitioners' refund liability, but continued to order a refund of the portion resulting from an overcalculation of deferred tax surplus. In the end, the Commission ordered petitioners to refund approximately $4.5 million. *Reconsideration Order*, 4 F.C.C.R. 3965, 3968 ¶ 30, 3970–71 ¶ 50, 3973 app. B (1989). In so doing, the Commission proclaimed the proposition we now review that it has "authority to impose refunds under § 204(a) without an accounting order or suspensions." *Id.* at 3965 ¶ 3.

## STATUTORY FRAMEWORK

As noted above, FCC rules require local exchange companies to revise annually their "access" tariffs (that is, tariffs setting out the rates for use of local telephone company facilities to originate and terminate interstate long distance calls). 47 C.F.R. §§ 69.1–.612. Those filings are then subject to FCC review under statutory authority conferred in 47 U.S.C. § 204(a)(1). That section provides, in relevant part:

> Whenever there is filed with the Commission any new or revised charge, ... the Commission may ... enter upon a hearing concerning the lawfulness thereof; and pending such hearing and the decision thereon the Commission, upon delivering to the carrier or carriers affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such charge, classification, regulation, or practice, in whole or in part but not for a longer period than five months beyond the time when it would otherwise go into effect; and after full hearing the Commission may make such order ... as would be proper in a proceeding initiated after such charge, classification, regulation, or practice had become effective. If the proceeding has not been concluded and an order made within the period of the suspension, the proposed new or revised charge ... shall go into effect ...; but in case of a proposed charge for a new service or an increased charge, the Com-

mission may by order require the interested carrier or carriers to keep accurate account of all amounts received by reason of such charge ..., specifying by whom and in whose behalf such amounts are paid, and upon completion of the hearing and decision may by further order require the interested carrier or carriers to refund, with interest, to the persons in whose behalf such amounts were paid, such portion of such charge for a new service or increased charges as by its decision shall be found not justified.

*Id.*

It was under this section that the Commission claimed the authority to order the refund in the present case. *Reconsideration Order,* 4 F.C.C.R. at 3965 ¶ 3. Petitioners contend that the Commission's authority to order refunds is dependent upon its following the procedures of § 204(a)(1), and that once the Commission has allowed the rate to go into effect without suspension or accounting order, then the Commission's remedial power is limited to that available under 47 U.S.C. § 205(a). Under that section,

[w]henever, after full opportunity for hearing, ... the Commission shall be of opinion that any charge ... is or will be in violation of any of the provisions of [Chapter 5, Title 47], the Commission is authorized and empowered to determine and prescribe ... the just and reasonable charge ... to be *thereafter* observed....

*Id.* (emphasis added).

The differing interpretations of the Commission's statutory authority by the Commission and the petitioners create the sole issue for resolution in this proceeding.

### ANALYSIS

We agree with petitioners that the Commission has overstepped its statutory authority. In making this determination, we are advertent to the doctrine of *Chevron U.S.A. Inc. v. NRDC,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Under that doctrine, we afford deference to an agency's (such as the FCC) interpretation of its operative statutes (such as 47

U.S.C. § 204(a)(1)). However, we do not defer to the interpretation of the Commission in the present case, for we apply *Chevron* deference only where the intent of Congress is unclear and the agency's interpretation is a reasonable one. Here, we get off at the first stop. The intent of Congress is clear. As the Supreme Court instructed in *Chevron,* "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." 467 U.S. at 843 n. 9, 104 S.Ct. at 2781 n. 9.

The words of § 204(a)(1) which convey the power to order refunds likewise set forth the conditions of that conveyance. Where the charge is filed, the Commission may suspend its operation, then after a hearing it may issue such rate order as would be proper. However, if the Commission's hearing has not been concluded and a rate order issued within the period of suspension, then the proposed charge goes into effect. During this period when the proposed charge is effective but the Commission's hearing is still pending, the Commission may enter an accounting order requiring that a record be kept of amounts collected under the proposed charge. Then, upon completion of the hearing and decision, the Commission "may by *further* order require [a] ... refund" of amounts found unreasonable.

Thus, under the plainest guide to congressional intent—the words of the statute—the Commission's authority to order the refund follows the exercise of the suspension process under § 204(a)(1). We need not reach whether an accounting order is necessary, for where the Commission has not made the first step, ordering a suspension, it never reaches the last one, ordering a refund. Moreover, this does not mean that the Commission cannot take action to correct an unreasonable rate if it fails to order a suspension. It can still do so, but it must do so under § 205, which speaks only prospectively.

This is not unique, nor is it new. Precisely the same regulatory dichotomy ex-

ists in the federal energy regulatory area. Under § 4 of the Natural Gas Act ("NGA"), 15 U.S.C. § 717c, pipelines must file with the Federal Energy Regulatory Commission ("FERC") all rates and changes in rates they propose, just as telephone companies must file with the FCC under § 204. Under § 4, as under § 204, the FERC, as the Commission here, may suspend the proposed rate for up to five months, and if after hearing, FERC decides that the rate was unjust, it may order the pipeline to refund the excess portion to its customers.

Furthermore, under § 5 of the NGA, 15 U.S.C. § 717d, the FERC, like the FCC under § 205, may on its own initiative or upon complaint, investigate an existing rate, determine after hearing that the rate is unjust or unreasonable, and provide relief—prospectively. In *Sea Robin Pipeline Co. v. FERC*, 795 F.2d 182 (D.C.Cir.1986), we reminded the FERC that

[t]he Commission is not free to blend, or pick and choose at will between, its section 4 and 5 authority; FERC must use the appropriate authorization in the appropriate way in order to remain with the bounds Congress has set for the agency.

*Id.* at 183. We went on to point out that § 5 "conspicuously lacks the explicit provision for refunds and associated accounting requirements found in section 4." *Id.* at 184 n. 1.

We would have difficulty in improving on that analysis. Section 204, like § 4 of the NGA, provides the procedure for suspension and requirements for accounting procedures consistent with congressional intent to allow refund remedies. Section 205, like § 5 of the NGA, does not. It does a commission no good to claim, as the FCC did here, that it is acting under the section providing for refunds when its actions are consistent only with the section not so providing. It cannot "blend or pick and choose at will." All parties to this proceeding agree that historically the Commission has suspended rates it intended to question for at least one day. This it must do in order to bring its further actions within the ambit of § 204. We also note that we are not requiring this as a talisman, ritual, or

password. The statute provides not only for the suspension but also that the statement suspending a rate inform the carrier in writing of the Commission's reasons for the suspension. Having been given this notice, the carrier may realize that the FCC's objections are well taken, or not worth a fight, and it may seek to bring itself within compliance and obviate the whole process. The statute does not impose a rule without a reason.

Nor is this rule something novel recently introduced to torment communications or energy commissioners. The rule against retroactive ratemaking has been around for some time. In *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981), the Supreme Court noted that "[n]ot only do the courts lack authority to impose a different rate than the one approved by the Commission, but the Commission itself has no power to alter a rate retroactively." *Id.* at 578, 101 S.Ct. at 2930 (footnote omitted) (applying the Natural Gas Act). In so doing, the Supreme Court cited with approval our decision in *City of Piqua v. FERC*, 610 F.2d 950, 955 (D.C.Cir.1979), wherein we noted that "the rule against retroactivity is 'a cardinal principle of ratemaking: a utility may not set rates to recoup past losses, nor may the Commission prescribe rates on that principle.'" *Id.* at 954 (internal bracketing deleted) (quoting *Nader v. FCC*, 520 F.2d 182, 202 (D.C.Cir.1975)). We can only read the statutory language in §§ 204 and 205 as a congressional embrace of this cardinal principle. In § 205 Congress provided the mechanism for prospective relief from unreasonable rates. In § 204 it provided the mechanism for preventing an unreasonable rate from being filed, or at least from taking effect only subject to an accounting order and such further order as would be required. The one supposes prospective relief, the other the possibility of refund.

As the Supreme Court in *Atlantic Refining Co. v. New York Public Service Commission*, 360 U.S. 378, 389, 79 S.Ct. 1246, 1254, 3 L.Ed.2d 1312 (1959), bluntly stated, "Gas purchasers ... have no protection from excessive charges collected during the pendency of a § 5 proceeding." Likewise, long distance telephone carriers have

no protection from excess access charges collected during the pendency of a § 205 proceeding. It does not change things to call a § 205 proceeding a § 204 proceeding when there has been no suspension and accounting order as contemplated by § 204.

The Commission insists that the § 204 suspension and accounting order are optional. It reminds us that the statute at each step uses the word "may," not the word "shall," and that we have consistently interpreted "may" as granting authority, not obliging its exercise. *See Arctic Slope Regional Corp. v. FERC*, 832 F.2d 158, 165 (D.C.Cir.1987). All this is true, it simply is not directed at the point. The question is not whether the Commission is obliged to conduct a § 204 proceeding, the question is whether it is authorized to order refunds when it has not conducted such a proceeding. For the reasons set forth above, our answer is "no."

CONCLUSION

We conclude that when the FCC investigates and remedies an unreasonable rate which it has theretofore permitted to become fully effective without a suspension order, it acts under § 205, not § 204. We further conclude that the Commission has no authority under § 205 to order the refunds contemplated only under § 204. We therefore order that the petition for review be allowed.