**CITY OF GIRARD, KANSAS,**
Petitioner,

v.

**FEDERAL ENERGY REGULATORY COMMISSION,** Respondent, **Kansas Gas and Electric Company,** Intervenor.

No. 84–1210.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 2, 1985.

Decided May 16, 1986.

Charles F. Wheatley, Jr. with whom Peter A. Goldsmith was on brief for petitioner.

John Estes, Attorney, F.E.R.C., for respondent, Barbara J. Weller, Deputy Sol., and Michael E. Small, Attorney, F.E.R.C., were on brief for respondent.

Jerome E. Feit, Attorney, F.E.R.C., also entered his appearance for respondent.

J. Michael Peters was on brief for intervenor, Kansas Gas and Elec. Co.

Before ROBINSON, Chief Judge, WALD, Circuit Judge, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge McGOWAN.

McGOWAN, Senior Circuit Judge:

Petitioner Girard, Kansas, is a municipality that purchases wholesale power from intervenor Kansas Gas and Electric ("KG & E"). Girard maintains its own power generation facilities but purchases its excess requirements from KG & E. Girard then resells some or all of its power to retail customers. In this case, Girard challenges an order of the Federal Energy Regulatory Commission ("Commission" or "FERC") refusing to grant retroactive effect to a KG & E rate filing. Based on the filed rate doctrine, we reject Girard's claim of entitlement to a retroactive effective date. We further find that whether or not the ban on retroactive ratemaking disables the Commission from implementing KG & E's new rate retroactive to the date the

rate was filed, Girard has failed to present good cause for waiving the entire sixty-day notice period before new rates generally become effective.

## I. THE STATUTORY FRAMEWORK

Under §§ 205 and 206 of the Federal Power Act, Pub.L. No. 333, 49 Stat. 847, 851–52 (1935) (codified as amended at 16 U.S.C. §§ 824d, 824e (1982)), FERC has the authority and duty to regulate the rates at which wholesale electrical power is sold. A utility is prohibited from charging unjust and unreasonable rates. 16 U.S.C. § 824d(a) (1982). There are two tracks for securing review of a rate. Under § 205 of the Act, public utilities can prompt review of a proposed rate by filing a new rate schedule with the Commission. Under § 206, the Commission may review the lawfulness of a rate already in effect after a complaint, or on its own motion.

Under § 205(d), the first track for review, a utility may apply for a new rate. After sixty days' notice to the Commission and the public, the new rate may become effective.[1] The Commission has the power to waive this sixty-day notice requirement "for good cause shown." 16 U.S.C. § 824d(d) (1982). If the Commission determines that a proposed rate may be unlawful, it may suspend its effective date for up to five months pending a hearing. Federal Power Act § 205(e), 16 U.S.C. § 824d(e) (1982).[2]

Section 206 comprises the second track for Commission review.[3] The Commission may review rates already in effect under § 206 on complaint or on its own motion. If the Commission finds the rate unjust or unreasonable, it may set a new rate "to be thereafter observed." Federal Power Act § 206(a), 16 U.S.C. § 824e(a) (1982). It is settled that the Commission has no power under § 206 to order relief other than prospectively from the date of its decision that the existing rate is unlawful. *See Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 578, 101 S.Ct. 2925, 2930, 69 L.Ed.2d 856 (1981).[4]

In this case, we review the Commission's determination in a § 205 proceeding that a new rate filed by a utility on December 5,

---

**1.** Section 205(d) provides:

Unless the Commission otherwise orders, no change shall be made by any public utility in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after sixty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. The Commission, for good cause shown, may allow changes to take effect without requiring the sixty days' notice herein provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published.

16 U.S.C. § 824d(d) (1982).

**2.** Section 205(e) provides, in part:

Whenever any such new schedule is filed the Commission shall have authority ... to enter upon a hearing concerning the lawfulness of such rate ...; and, pending such hearing and the decision thereon, the Commission ... may suspend the operation of such sched-

ule and defer the use of such rate ..., but not for a longer period than five months beyond the time when it otherwise would go into effect....

16 U.S.C. § 824d(e) (1982).

**3.** Section 206(a) provides, in part:

Whenever the Commission, after a hearing had upon its own motion or upon complaint, shall find that any rate ... demanded, observed, charged, or collected by any public utility for any transmission or sale subject to the jurisdiction of the Commission ... is unjust, unreasonable, unduly discriminatory or preferential, the Commission shall determine the just and reasonable rate ... to be thereafter observed and in force, and shall fix the same by order.

16 U.S.C. § 824e(a) (1982).

**4.** *Arkansas Louisiana* arose under the Natural Gas Act. This case comes to us under the Federal Power Act. Nevertheless, the "relevant provisions of the two statutes 'are in all material respects substantially identical.'" *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577 n. 7, 101 S.Ct. 2925, 2930 n. 7, 69 L.Ed.2d 856 (1981) (quoting *FPC v. Sierra Pacific Power Co.*, 350 U.S. 348, 353, 76 S.Ct. 368, 371, 100 L.Ed. 388 (1956)).

1983 could become effective only on January 31, 1984.

## II. THE GIRARD DISPUTE

Girard maintains a power distribution system to serve its inhabitants. Some or all of this power is initially supplied to Girard by KG & E. As with all customers, Girard's rates are determined by a tariff on file with the Commission.. The particular filing applicable to Girard is entitled "Schedule 147." Schedule 147 incorporates rate features designed for municipal customers who take only part of their requirements from the utility.[5] Schedule 147 was filed with the Commission on March 24, 1981. It detailed the terms under which KG & E would sell power to Girard, and had a term of five years. Under Schedule A of Schedule 147, the precise amount of prearranged, or "firm," power supplied each year by KG & E to Girard was to be expressed in yearly letters of intent signed by each of the parties. These letters of intent obligated KG & E to sell, and Girard to buy, an agreed-upon amount of power during the term of the letter. On September 24, 1981, Girard and KG & E executed a letter of intent specifying the quantity to be purchased by Girard over a fourteen-month period beginning July 1, 1981. On September 20, 1982, the parties executed a new letter of intent covering the period from August 1, 1982, to July 31, 1983.

Sometime prior to July 31, 1983, Girard's power generation facilities failed. Since Girard was incapable of generating any power on its own, it became fully dependent on purchases from KG & E. The City requested that KG & E charge Girard under a lower rate schedule, reflecting Girard's new status as a full-requirements customer. KG & E did have a tariff on file with the Commission (Schedule PWM–883) setting the rate it charged certain full-requirements municipal customers. Prior to this dispute, however, it was KG & E's policy to file PWM–883 as the rate schedule applicable to a particular full-requirements

customer only if that customer executed a full-requirements contract with the utility. Since Girard and KG & E were still in the process of negotiating such a contract, the utility did not immediately accede to Girard's request. After July 31, 1983, the parties' contract, as memorialized by the second letter of intent, had expired. KG & E continued to charge Girard under Schedule 147, the partial-requirements tariff, while the parties attempted to negotiate a new contract.

On December 5, 1983, after four months of unsuccessful negotiations, KG & E filed a new, full-requirements rate schedule applicable to Girard. Girard intervened, challenging the new rate on the merits, as well as KG & E's proposed effective date of January 31, 1984. Girard argued that it was entitled to purchase power under the lower, full-requirements schedule as of August 1, 1983, when its contract expired and it was a "de facto" full-requirements user. On February 3, 1984, the Commission rejected Girard's claims and implemented the new full-requirements rate as of January 31, 1984, subject to some limitations not relevant here. *Kansas Gas & Elec. Co.*, 26 F.E.R.C. ¶ 61,122 at 61,305 (1984) ("Initial Decision"). The Commission denied Girard's petition for rehearing on April 4, 1984. *Kansas Gas & Elec. Co.*, 27 F.E.R.C. ¶ 61,009 at 61,015 (1984) ("Rehearing").

Girard now petitions this court for review of the Commission's order regarding the effective date of the new rate. We have jurisdiction based on 16 U.S.C. § 825l (b) (1982).

## III. THE FILED RATE DOCTRINE

■ The filed rate doctrine "forbids a regulated entity to charge rates for its service other than those properly filed with the appropriate federal regulatory authority." *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577, 101 S.Ct. 2925, 2930, 69 L.Ed.2d 856 (1981); *see Montana-Dakota Utils. Co. v. Northwestern Pub. Serv. Co.*,

---

**5.** KG & E also supplies some municipalities with all of their power needs. The rate sched-

ules applicable to these customers are termed "full-requirements" rates.

341 U.S. 246, 251, 71 S.Ct. 692, 695, 95 L.Ed. 912 (1950). The purpose of the filed rate doctrine is to assure effective Commission oversight of the rates at which power is sold. "The considerations underlying the [filed rate] doctrine ... are preservation of the agency's primary jurisdiction over reasonableness of rates and the need to insure that regulated companies charge only those rates of which the agency has been made cognizant." *City of Cleveland v. FPC,* 525 F.2d 845, 854 (D.C.Cir.1976).

In both its Initial Decision and Rehearing, the Commission relied on the filed rate doctrine to reject Girard's claim that it was *entitled* unilaterally to choose the applicable rate schedule. Initial Decision at 2 n. 4, 26 F.E.R.C. at 61,307 n. 4 ("there is on file a rate applicable to service from August 1, 1983 to January 31, 1984"); Rehearing at 2, 27 F.E.R.C. at 61,015 ("we believe that Girard reads the filed rate doctrine ... entirely too loosely in asserting that a customer should have unfettered discretion to choose among utility rate schedules, to shift services and rates at will, and to obtain an alternative rate for prior service after-the-fact").

Girard argues that the filed rate doctrine does not apply to this case. At the time the last letter of intent expired, KG & E had two types of tariffs on file with the Commission: partial-requirements rates and full-requirements rates. Since the Commission had already determined the lawfulness of the full-requirements rate as applied to other municipalities, Girard argues that it does no damage to the filed rate doctrine to allow it to choose between rates already on file. Girard contends that it did not request a rate that the Commission had not approved; rather, it merely sought application of a rate that the Commission had already accepted.

Girard finds support for its position in *New England Power Co. v. FPC,* 349 F.2d 258 (1st Cir.1965). In that case, the court affirmed an order of the Federal Power Commission (the predecessor to FERC) that required a utility to accede to a city's request to receive power directly from the utility, rather than through an intermediary. Girard argues that if the Commission has the power to order a substitute interconnection, it must have the lesser power to order application of a more appropriate rate.

Girard's argument misses the mark, however. The City is claiming it is *entitled* to choose its own rate. Assuming for the sake of argument that *New England Power* is at all relevant, it stands only for the proposition that the Commission itself has *power* to order an interconnection. *Id.* at 263; *see* 16 U.S.C. § 824a(b) (1982) (Commission *may* order interconnection when necessary or appropriate). It does not state that a customer is necessarily *entitled* to the interconnections it desires.

Moreover, Girard's characterization of the filed rate doctrine misconstrues the thrust of the prohibition contained in that rule. Girard argues that "[t]he Commission's regulatory convenience is not disrupted by simply allowing a customer to move from one established wholesale class to another." Petitioner's Br. at 8. The City also asserts that its demand that the full-requirements rate be applied "did not call for subversion of an approved rate." *Id.* The City's position, however, would undermine the very heart of the filed rate doctrine. If wholesale customers could choose for themselves which rate they desired, the Commission would soon effectively lose its power to review rates. Indeed, the Commission could no longer assure that "regulated companies charge only those rates of which the agency has been made cognizant," *City of Cleveland,* 525 F.2d at 854, if customers could choose among rates willy-nilly. While Girard seeks application of a rate that by its terms *seems* appropriate to its situation, Girard is simply not empowered to make that decision. The Commission's jurisdiction over rates encompasses review of *each* rate charged to *each* customer. When a utility changes service to any customer, it must file a new tariff with the Commission. 16 U.S.C. § 824d(d) (1982). Only the Commis-

sion may determine the lawfulness of the new rate.

Girard also argues that the filed rate doctrine is inapplicable because no rate was on file as of August 1, 1983. Schedule A of Schedule 147 requires the parties' firm-power contract to be evidenced by annual letters of intent. Respondent's Br., App. B, at Schedule A ¶ 1.2. Girard argues that since the filed rate itself requires a letter of intent, and none was in effect on August 1, there was no filed rate in effect.

We find this an unacceptably strained reading of Schedule A. Schedule A applies only to firm power: "electrical capacity and accompanying energy held in readiness and made available by one party (Seller) for the other party (Buyer) on a *prearranged* basis." Schedule A ¶ 1.1 (emphasis added). Schedule 147 has two more schedules, applicable to emergency and supplemental service, that do not require annual letters of intent in order to govern relations between the parties. At oral argument, Girard conceded that as of August 1, 1983, KG & E was under no obligation to deliver any power to Girard at all, since the contract had expired. If so, then the parties certainly were not operating under Schedule A, which governs prearranged firm power sales. This does not mean that the rest of

Schedule 147 was inapplicable. Girard's contention, that Schedule A's admonition that contracts be in writing overrides the five-year term embodied in the filing itself, presents a case of the tail wagging the dog. The terms of the filing bound both KG & E and Girard until the Commission approved changes. Any other conclusion would undermine the filed rate doctrine.[6]

We therefore reject the petitioner's challenge to the Commission's application of the filed rate doctrine. The City was not *entitled* to choose the applicable rate *unilaterally*.

### IV. RETROACTIVE RATEMAKING

While it may not be *entitled* to an effective date of August 1, 1983, the City argues that the Commission nevertheless has the *power* to order that effective date. In its brief to this court and at oral argument, the Commission represents that it reads the Federal Power Act as disabling it from ordering an August 1 effective date in this case. In the Rehearing below, however, the Commission took an alternative position: it had no power to order a retroactive effective date, and even if it did, the city had not shown good cause for such an order. Rehearing at 2–3, 27 F.E.R.C. at 61,015–16.

---

**6.** Girard also urges this court to reverse the Commission's determination because of a flaw in the Commission's reasoning. In its Initial Decision, the Commission rejected Girard's retroactivity request, noting that:

> Girard's *existing* agreement commits the city to firm partial requirements service through 1986, regardless of the operating condition of its generating units or the redetermination of a particular power year's contract demand. Therefore, there is on file a rate applicable to service from August 1, 1983 to January 31, 1984, and we find Girard's arguments supporting an August 1, 1983 effective date for the proposed filing to be groundless.

Initial Decision at 2 n. 4, 26 F.E.R.C. at 61,307 n. 4 (emphasis in original). In its petition for rehearing before the Commission, Girard contended that the Commission had erred in referring to an existing agreement, since its last letter of intent had expired on July 31, 1983. In the denial of rehearing, the Commission corrected itself:

> Our "mistake" in the earlier order, though not one of fact, was perhaps in our choice of words. Instead of referring to an "existing

agreement" between Girard and KG & E, we might have more accurately referred to an "existing approved rate schedule," inasmuch as the customer had never executed the document. That rate schedule provides for partial requirements service up to the amount of contract demand stipulated in the annual letters of intent.

Rehearing at 2, 27 F.E.R.C. at 61,015.

Girard renews here its attack on the Commission's assertion in its Initial Decision that there was an "existing agreement" between the parties as of August 1, 1983 (after expiration of the last letter of intent). Girard claims that the Commission has misconstrued the relationship between the parties by incorrectly assuming that Schedule 147 was a contract. Since the City never signed Schedule 147, the City argues that it cannot be bound by that schedule. The only contract between the parties, Girard claims, is the expired letter of intent. This error, the city argues, requires reversal. But we need not decide this point. As noted above, the Commission abandoned this "contractual" rationale in its rehearing decision. It is thus irrelevant to the Commission's decision.

The Commission's position that it has no power to order a retroactive effective date in this case is based on the so-called "retroactive ratemaking rule." This rule "bars ... the Commission's retroactive substitution of an unreasonably high or low rate with a just and reasonable rate." *City of Piqua v. FERC*, 610 F.2d 950, 954 (D.C.Cir. 1979); *see Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 578, 101 S.Ct. 2925, 2930, 69 L.Ed.2d 856 (1981). "It is, of course, a cardinal principle of ratemaking that a utility may not set rates to recoup past losses, nor may the Commission prescribe rates on that principle." *Nader v. FCC*, 520 F.2d 182, 202 (D.C.Cir.1975). The ban on retroactive ratemaking could be construed to bar the Commission from setting effective dates such as the one Girard requests.

Girard argues, however, that it falls within the rule of *City of Piqua, supra.* *See* Petitioner's Br. at 7 n. 2. In that case, this court ruled that the retroactive ratemaking rule does not bar the Commission from setting an effective date that falls before the filing date, at least when the parties have agreed to such a date. *City of Piqua*, 610 F.2d at 954–55. Girard apparently reads *City of Piqua* as empowering the Commission to set retroactive effective dates through its power to waive its filing requirements for good cause shown. *See* 16 U.S.C. § 824d(d) (1982) (allowing waiver of sixty-day notice before effective date of rate if good cause shown).

It is clear that the instant case presents a situation not directly governed by *City of Piqua*. Unlike *City of Piqua*, the parties here have not agreed to an effective date earlier than the filing date. This difference is irrelevant to Girard's position, however, because under Girard's theory, *City of Piqua* turned not on the agreement of the parties but on the Commission's statutory waiver power. Thus, even though Girard and KG & E have not agreed, the city

argues that the Commission can use its waiver power to order an effective date that falls before the date the new rate was filed. In this case, Girard requests an August 1 effective date even though the new rate was filed on December 5, over four months later. The Commission's alternative position below was that the ban on retroactive ratemaking bars just such a result. Rehearing at 3, 27 F.E.R.C. at 61,-016.

No court has squarely decided whether the Commission's waiver power may extend backward past the original filing date absent the parties' agreement. Indeed, resolution of the conflict between the waiver power and the retroactive ratemaking rule presents difficult questions of statutory interpretation and regulatory policy. In *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 578 n. 8, 101 S.Ct. 2925, 2930 n. 8, 69 L.Ed.2d 856 (1981) (emphasis in original), the Supreme Court noted the potential conflict between the ban on retroactive ratemaking and the Commission's waiver power under the parallel provision of the Natural Gas Act:

> Although the Commission may not *impose* a retroactive rate alteration ..., it may "for good cause shown," 15 U.S.C. § 717c(d), waive the usual requirement of timely filing of an alteration in a rate. Assuming, *arguendo*, that waiver is available for retroactive collection of a higher rate than the one on file, we note that in this case, the Commission has expressly found that respondents have not demonstrated that good cause exists for waiving the filing requirements on their behalf.

As in *Arkansas Louisiana*, resolution of the issue is unnecessary to the disposition of this case; thus, we decline to address it.[7] We follow the Supreme Court's lead in *Arkansas Louisiana* and assume, *arguendo*, that the Commission has the power to set the effective date Girard requests. Since we agree with the Commission's ex-

---

7. Similarly, we express no view on the Commission's waiver regulation, which provides, in part:

> Upon application and for good cause shown, the Commission may, by order, provide that a rate schedule, or part thereof, shall be effective as of a date *prior to the date of filing* or prior to the date the rate schedule would become effective in accordance with these rules.

press finding that Girard failed to demonstrate good cause, we affirm.

### V. GOOD CAUSE

 Initially, we note that Congress, through § 205, has clearly delegated waiver discretion to the Commission and not to the courts. Our review of the Commission's waiver decisions, then, is quite limited. *See United Gas Pipe Line Co. v. FERC*, 707 F.2d 1507, 1511 (D.C.Cir.1983) (denial of waiver reversed only if agency acted arbitrarily by failing to give "meaningful consideration" to the waiver application).

The Commission's long-standing general policy is to find "good cause" only when the parties to the rate have agreed at some point in their negotiations on an effective date and the waiver is in the public interest. *See City of Piqua, supra; Pacific Power & Light Co.*, 27 F.E.R.C. ¶ 61,080 at 61,146, 61,148 (1984); *Connecticut Light & Power Co.*, 20 F.E.R.C. ¶ 61,353 at 61,730, 61,731 (1982); *Dayton Power & Light Co.*, 12 F.E.R.C. ¶ 61,296 at 61,678, 61,679 (1980). This policy of limiting good cause to cases of prior agreement is a reasonable exercise of the Commission's delegated discretion. The consent requirement promotes equity among the parties to a ratemaking proceeding by giving each party the same power to control the effective date of a new rate. By requiring agreement, the Commission also conserves much needed resources, obviating the need for extended case-by-case analyses of good cause. Finally, requiring the waiver to be in the public interest fulfills the Commission's statutory mandate to regulate the transmission and sale of electric energy with a view to the public interest. *See* 16 U.S.C. § 824a (1982).

The Commission applied its general policy to this case. Girard does not dispute

that it never agreed with KG & E on a retroactive effective date. When KG & E submitted its filing, it requested an effective date of January 31, 1984, 57 days after filing. This was, in effect, a request for a waiver of three days of the sixty-day notice requirement. Girard's request for an August 1 effective date was, in effect, a request for a waiver of the entire sixty days, and more. Thus, the parties were in agreement only as to the three days between January 31 and February 3. The Commission was therefore fully justified in finding no agreement for an effective date other than January 31. Under the Commission's precedents, the waiver of the three days between January 31 and February 3 was properly granted because the parties were in agreement and there was no public interest obstacle. Girard's further request for a waiver was properly denied.[8]

Accordingly, the petition for review is *Denied.*

---

18 C.F.R. § 35.11 (1985) (emphasis added). We must confess that we are somewhat mystified that the Commission has essentially argued in this case that the retroactive ratemaking rule bars the Commission from awarding a waiver that its regulations apparently would permit. The Commission has made no effort to explain this seeming inconsistency. *Cf. Local 32, Amer-*

*ican Federation of Government Employees v. FLRA*, 774 F.2d 498, 502 (D.C.Cir.1985).

8. On review here, the Commission also argues that Girard's waiver request was procedurally defective. Respondent's Br. at 16–17. Since the waiver was properly denied on the merits below, we need not reach this question.