895 F.2d 791
 282 U.S.App.D.C. 386, 111 P.U.R.4th 306
 COLUMBIA GAS TRANSMISSION CORPORATION, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
General Service Customer Group, Indiana Gas Company, Inc.,
Panhandle Eastern Pipe Line Company, The Kansas
Power and Light Company, Intervenors.
 Nos. 88-1701, 88-1808, 88-1825, 89-1052, 89-1086, 89-1140,
89-1186 and 89-1200.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 12, 1989.
Decided Feb. 9, 1990.
Rehearing and Rehearing En Banc Denied In No. 88-1701 April
19, 1990.
 
 Stephen J. Small, Boston, Mass., with whom John H. Pickering, Timothy N. Black, Neal T. Kilminister, Susan D. McAndrew, and Richard E. Gottlieb (for Columbia Gas Transmission Corp.), Jeffrey M. Petrash, Washington, D.C., (for Michigan Consol. Gas Co.), Robert A. MacDonnell, Philadelphia, Pa., and Kathleen A. Kane (for Philadelphia Elec. Co.) were on the joint brief, for listed petitioners in Nos. 88-1701, 88-1808, 89-1052, 89-1086, and 89-1200.
 Philip B. Malter, with whom Charles F. Wheatley, Jr. was on the brief, for petitioner Municipal Defense Group in Nos. 88-1825 and 89-1140.
 Raymond N. Shibley and Marlene L. Stein, Washington, D.C., were on the brief for petitioner Panhandle Eastern Pipe Line Co. in No. 89-1186.
 Frederic J. Georg entered an appearance for petitioner Columbia Gas Transmission Corp., and James H. Holt, Washington, D.C., entered an appearance for petitioner Michigan Consol. Gas Co.
 Jill Hall, Atty., F.E.R.C. ("FERC"), with whom Catherine C. Cook, Gen. Counsel, and Jerome M. Feit, Solicitor, FERC, Washington, D.C., were on the brief, for respondent in all cases. Frank Lindh, Washington, D.C., and Joseph S. Davies, Attys., FERC, also entered appearances for respondent.
 Raymond N. Shibley, with whom Marlene L. Stein (for Panhandle Eastern Pipe Line Co.), Robert G. Hardy and Michael J. Fremuth (for Transcontinental Gas Pipe Line Corp.), Douglas Field, Jr. and Robert W. Perdue, Washington, D.C., (for Texas Gas Transmission Corp.) were on the joint brief, for intervenors in Nos. 88-1701, 88-1808, 88-1825, 89-1052, 89-1086, 89-1140, and 89-1200.
 William H. Penniman (for Process Gas Consumers Group) and Mary E. Baluss and Marilyn A. Specht, Washington, D.C., (for UGI Corp.) were on the joint brief for intervenors in Nos. 89-1052, 89-1086, 89-1140 and 89-1200. Christopher J. Barr, Washington, D.C., also entered an appearance for UGI Corp.
 Martin J. Bregman, Topeka, Kan., and Steven J. Kalish, Washington, D.C., entered appearances for intervenor Kansas Power and Light Co. in Nos. 88-1701, 88-1808, and 88-1825.
 Before BUCKLEY, D.H. GINSBURG,* and SENTELLE, Circuit Judges.
 Opinion for the court filed by Circuit Judge BUCKLEY.
 BUCKLEY, Circuit Judge:
 
 
 1
 These consolidated cases concern the assertion, by the Federal Energy Regulatory Commission, of the power to approve a retroactive rate increase through exercise of its authority, under section 4(d) of the Natural Gas Act, to waive the thirty days' notice required by that section. As we find that the Commission lacks such power, we remand seven of the cases for action consistent with this opinion and dismiss the eighth as moot.
 
 I. BACKGROUND
 A. Regulatory Background
 
 2
 In section 110(a) of the Natural Gas Policy Act of 1978, Congress provided that sellers of natural gas could lawfully recover
 
 
 3
 any costs of compressing, gathering, processing, treating, liquefying, or transporting such natural gas, or other similar costs, borne by the seller and allowed for, by rule or order, by the Commission.
 
 
 4
 15 U.S.C. Sec. 3320(a). In July 1980, acting pursuant to this rulemaking authority, the Federal Energy Regulatory Commission ("FERC" or "Commission") informed gas producers that it intended to allow them, as "first sellers" of natural gas, to pass certain field compression and gathering costs through to their pipeline customers ("first purchasers"). Order No. 94, 45 Fed.Reg. 53,099 (1980) ("Order No. 94"). At the same time, the Commission stated that it would not accept applications for the recovery of these costs until it had completed further rulemaking to establish an appropropriate generic allowance for such costs ("deferred costs"). Id. at 53,107-08. The Commission assured the producers that the new regulations would provide a retroactive mechanism by which they could recover the costs that were determined to be allowable, from the effective date of Order No. 94 until the new regulations took effect. Id. The new rules authorizing their recovery were issued almost three years later, in March 1983. Order No. 94-A, 48 Fed.Reg. 5,152 (1983); Order No. 94-B, 48 Fed.Reg. 5,190 (1983).
 
 
 5
 Under existing procedures, the first purchaser pipelines could recover these deferred charges from their current customers through the purchased gas adjustment clauses ("PGA clauses") authorized by Commission regulations. 18 C.F.R. Secs. 154.301-.310 (1988). These clauses, which must be filed with and approved by the Commission, permit pipelines to recover through prospective sales the estimated production-related costs they will be required to reimburse producers. Rather than pursue this method, however, five pipeline companies petitioned FERC for permission to "direct bill" customers who had purchased gas produced during the 1980-83 period ("second purchasers") for the deferred costs incurred in its production.
 
 
 6
 The petitioning pipelines noted that buying patterns in the industry had changed significantly during the three years that had elapsed between the issuance of Order No. 94 and Order No. 94-A. As a consequence, it could not be assumed that the current customers who would have to absorb the newly authorized charges prospectively through PGA clauses were in any way representative of those who, during those three years, had purchased the gas that was subject to the deferred costs. The pipelines argued that considerations of equity required that those who had purchased that gas pay its true cost through a system of direct billing surcharges based on past purchases.
 
 B. Procedural Background
 
 7
 After the Commission approved each of these petitions,** various second purchasers petitioned for rehearing. When all such requests were denied, Columbia Gas Transmission Corp., The Municipal Defense Group, and Transcontinental Gas Pipe Line Corp. petitioned for review in this court, Columbia Gas and the Municipal Defense Group arguing that the allowance of the direct billing amounted to retroactive ratemaking prohibited by the Natural Gas Act ("NGA" or "Act"). We agreed, struck the orders authorizing direct billing, and remanded the case to the Commission for further proceedings consistent with our opinion. Columbia Gas Transmission Corp. v. FERC, 831 F.2d 1135, 1142 (D.C.Cir.1987) ("Columbia I ").
 
 
 8
 We based our decision on a finding that the Commission's orders had violated the well-established "filed rate doctrine." This doctrine, we noted, finds its origins in sections 4(c) and 5(a) of the Natural Gas Act, 15 U.S.C. Secs. 717c(c), 717d(a), which require that every natural gas company file rate schedules with the Commission that will then govern the amounts they can bill their customers. 831 F.2d at 1140. The purpose of this rule is to maintain predictability in the rates that will be charged, and this purpose is accomplished by the guarantee that rate changes will only be made prospectively. In arriving at our decision, we specifically rejected FERC's contention that Order No. 94 gave "everyone" notice of an impending increase in rates, finding instead that Order No. 94 was "addressed exclusively to first sales of natural gas." Id. We thus held that in the absence of such notice, FERC's allowance of direct billing for surcharges on previously purchased gas violated the rule against retroactive ratemaking.
 
 
 9
 FERC petitioned for rehearing, asserting that notwithstanding our opinion and although the point had not been argued on appeal, the Commission had implied authority, under section 4(d) of the Act, to waive the filed rate doctrine prohibiting retroactive changes in published rates. Section 4(d) provides:
 
 
 10
 Unless the Commission otherwise orders, no changes shall be made by any natural-gas company in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after thirty days' notice to the Commission and to the public.... The Commission, for good cause shown, may allow changes to take effect without providing the thirty days' notice herein provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published.
 
 
 11
 15 U.S.C. Sec. 717c(d) (1982) (emphasis added). The Commission maintained that the waiver issue had "crystallized" only after we had found that the Commission had given inadequate notice to warrant lawful retroactive ratemaking. Presumably, FERC was suggesting that because the filed rate doctrine requires adequate notice of any rate change and because it has the power, under section 4(d), to waive the notice requirement with good cause shown, the Commission may, by dispensing with this impediment, lawfully implement a rate retroactively.
 
 
 12
 As for the good cause required by section 4(d), FERC found it in the adverse effects that would flow from a misallocation of the more than $1.5 billion in deferred compression and gathering costs that had accumulated from July 1980 through March 1983. Not only would passing these costs along to current customers place the burden on purchasers of entirely unrelated gas, it would send the wrong market signals by distorting the true cost of current gas supplies.
 
 
 13
 We declined to rehear the case; but in light of the magnitude of the costs that were involved, we stated that on remand,
 
 
 14
 FERC [would be] free to consider the waiver issue and determine whether it may issue new orders on grounds consistent with the principles enunciated in our earlier opinion in this case.
 
 
 15
 Columbia Gas Transmission Corp. v. FERC, 844 F.2d 879, 880 (D.C.Cir.1988).
 
 
 16
 On remand, FERC asserted that it had unquestioned authority to waive the filed rate doctrine for good cause shown; and given the unique circumstances of this case, it concluded its previous orders should be reaffirmed and implemented. Transcontinental Gas Pipe Line Corp., 45 F.E.R.C. p 61,169 (1988). The Commission correctly noted that in Columbia I we held the direct billing procedure in the circumstances of these cases to violate the prohibition in sections 4(c) and 5(a) of the Act against retroactive ratemaking. Nonetheless, it concluded that irrespective of whether Order Nos. 94 and 94-A constituted notice to downstream purchasers sufficient to overcome the prohibition against retroactive ratemaking, "the overriding public interest in the maintenance of orderly gas markets through the equitable allocation of costs" made it "necessary and appropriate in these proceedings, under section 4(d) of the Natural Gas Act, to waive the filed rate doctrine." Id. at 61,488 & n. 26.
 
 
 17
 Subsequently, in response to a petition by Panhandle Eastern Pipe Line Co. ("Panhandle") for permission to direct bill its customers, the Commission purported to waive the filed rate doctrine for Panhandle as it had in the cases on remand from this court. Panhandle Eastern Gas Pipe Line Co., 44 F.E.R.C. p 61,173 (1988). Various parties petitioned this court for review. In addition, Panhandle petitioned for review of Panhandle Eastern Gas Pipe Line Co., 45 F.E.R.C. p 61,444 (1988) (Letter Order), in which FERC limited Panhandle to sixty days of accrued interest in its direct billing. The Commission then sought and received this court's order consolidating all of these petitions because of the common legal issues presented.
 
 II. DISCUSSION
 
 18
 A. FERC's Waiver Authority Under Section 4(d)
 
 
 19
 The Supreme Court has provided the following summary of the filed rate doctrine:
 
 
 20
 [T]he Act bars a regulated seller of natural gas from collecting a rate other than the one filed with the Commission and prevents the Commission itself from imposing a rate increase for gas already sold.
 
 
 21
 Arkansas Louisiana Gas Co. v. Hall, 453 U.S. 571, 578, 101 S.Ct. 2925, 2931, 69 L.Ed.2d 856 (1981) (emphasis added).
 
 
 22
 On remand, the Commission correctly identified the issue before it, and now before us, as "whether the Commission can and, in the circumstances of these cases, should waive the filed rate doctrine." 45 F.E.R.C. at 61,486. The Commission proceeded to resolve immediately the question of its authority to waive the doctrine:
 
 
 23
 The Commission's authority to waive the filed rate doctrine and its discretion whether to exercise this authority in particular circumstances are unquestioned. The only limitation imposed upon the Commission by the statute is that the grant of a waiver must be "for good cause shown."
 
 
 24
 Id. (citations omitted). It then spent the remainder of its opinion justifying the exercise of its authority in this particular case.
 
 
 25
 We find the scope of the section 4(d) waiver authority far less obvious than the Commission does. As we observed just three years ago:
 
 
 26
 No court has squarely decided whether the Commission's waiver power may extend backward past the original filing date absent the parties' agreement. Indeed, resolution of the conflict between the waiver power and the retroactive ratemaking rule presents difficult questions of statutory interpretation and regulatory policy.... [T]he Supreme Court has noted the potential conflict between the ban on retroactive ratemaking and the Commission's waiver power....
 
 
 27
 City of Girard v. FERC, 790 F.2d 919, 924 (D.C.Cir.1986) (citing Arkansas Louisiana Gas Co. v. Hall, 453 U.S. 571, 578 n. 8, 101 S.Ct. 2925, 2930-31 n. 8, 69 L.Ed.2d 856 (1981)). We conclude that while the Commission has considerable latitude to waive the notice requirement under section 4(d), its powers do not encompass what it claims in this case.
 
 
 28
 We begin by observing that FERC's reliance on City of Girard, supra, and United Gas Pipe Line Co. v. FERC, 707 F.2d 1507, 1511 (D.C.Cir.1983), for the proposition that its power to waive the filed rate doctrine is unquestioned, 45 F.E.R.C. at 61,486 and n. 12, is completely misplaced. Even a cursory reading of City of Girard will show that, far from holding that FERC had unquestioned authority to waive the filed rate doctrine, we took pains to avoid the question and resolved the issue by affirming the Commission's own determination that "good cause" was lacking. 790 F.2d at 924-25. Indeed, in Girard, the Commission would arguably have had a stronger case for retroactive action, as the municipality there was requesting only its reclassification into another category, that of full-requirements user, for which a valid tariff was already in force, rather than, as here, requesting a retroactive change in a valid tariff. Nonetheless, we specifically "decline[d] to address" the issue of whether FERC's waiver power may extend backward past the original filing date. Id. at 924. United Gas Pipe Line Co., for its part, is irrelevant to the issue before us. That case dealt with the Commission's power to waive its own regulation prohibiting a certain transportation rate adjustment mechanism, 18 C.F.R. Sec. 154.38(d)(3), see United Gas Pipe Line Co., 707 F.2d at 1509, and not with the waiver of the statutorily grounded filed rate doctrine.
 
 
 29
 Although the question of FERC's authority to waive the filed rate doctrine was technically left open by prior decisions, we believe the statutory language of section 4(d) and the logic of our decisions in City of Piqua v. FERC, 610 F.2d 950 (D.C.Cir.1979), and Columbia I deny the Commission the authority it claims. It is clear from the statutory language that section 4(d) is directed at the situation in which a utility, in this case a natural gas company, wishes to make a change in a rate that is already in full legal effect. The section stipulates that "no change [in filed rates] shall be made" by a company "except after thirty days' notice to the Commission and to the public." 15 U.S.C. Sec. 717c(d). Further in the same paragraph, the Commission is given authority, with good cause shown, to "allow changes to take effect without the thirty days' notice herein provided for." Id.
 
 
 30
 It is apparent that this statutory notice, which the Commission may waive on a showing of good cause, is not the notice of prospective rate adjustments to which we referred in Columbia I when we stated that the NGA's prohibition against retroactive rate increases might have been overridden if FERC had provided "adequate notice that [downstream] purchasers would be expected to pay the deferred charges at a later date." 831 F.2d at 1140. That statement was addressed to those circumstances in which the Commission has authorized increases in prices previously paid by purchasers who were already on notice that the prices they were paying were provisional only.
 
 
 31
 Thus, in City of Piqua v. FERC, 610 F.2d 950, 954-55 (D.C.Cir.1979), this court considered the situation where a utility provider and a town had contractually agreed upon a new, higher rate to take effect, by terms of the contract, on May 10, 1977. Id. at 951. Filing with the Commission was delayed for a few months because of the need to have the agreement approved by local authorities. Id. We held in that case that FERC, in approving the agreement, had not engaged in retroactive ratemaking: "the negotiated ratechange was not retroactive; it was prospective from the date of the contract." Id. at 954. As the Commission's waiver gave only prospective effect to the rate change, it did not implicate the filed rate doctrine.
 
 
 32
 The Fifth Circuit reached the same conclusion in Hall v. FERC, 691 F.2d 1184 (5th Cir.1982). In that case, the Commission had denied a request for the waiver of statutory notice so that a "favored nations clause" in a filed contract could be given effect. The Commission based its denial on the prohibition against retroactive rate increases. Id. at 1191. In finding that the Commission had erred, the court noted that in the circumstances of the case, "the Commission's waiver gives prospective application to the rates contractually authorized by the parties at the effective date contemplated by the contract." Id. at 1192. The court also made another significant observation. Referring to an earlier case for comparison, the court noted that where a company "sought a higher rate than that ever filed with the Commission or contemplated by the rate schedule/contract," then a "purer example of an action for a retroactive rate increase would be difficult to imagine;" thus "a waiver of section 4(d) notice filing requirements was neither involved nor applicable." Id. at 1191 (emphasis added).
 
 
 33
 The Commission acknowledges that courts have found "good cause for granting a waiver" only where the parties had previously agreed to a rate change. 45 F.E.R.C. at 61,487 n. 20. It then attempts to distinguish City of Piqua and Hall by arguing that while the courts have found "good cause" in giving effect to the "intent of the parties" in those cases, that is not the only basis upon which it can show good cause for granting a waiver. Id. at 61,487 & n. 20. As it has found that the public interest and equity require the approval of direct billing in these cases, the Commission asserts that it has sufficient cause, under section 4(d), to grant a waiver even without consent of the parties. Id.
 
 
 34
 But here again, the Commission misinterprets those cases where a seemingly "retroactive" rate was approved. City of Piqua and Hall did not authorize the Commission to impose rates retroactively because giving effect to the parties' intent is a policy of the Act and therefore "good cause" within the meaning of section 4(d). Rather, those cases found that because of pre-existing agreements between the parties and the notice that went automatically with them, those rates were not in fact retroactive. Id. at 1192; City of Piqua, 610 F.2d at 954. City of Piqua is quite emphatic about this:
 
 
 35
 The retroactive ratemaking rule thus bars ... the Commission's retroactive substitution of an unreasonably high or low rate with a just and reasonable rate. The present situation is immediately distinguishable. In this case, two parties agreed on new rate schedules and on the effective date for the new contract. The negotiated rate change was not retroactive; it was prospective from the date of the contract.
 
 
 36
 Id. at 954.
 
 
 37
 The same principle obtains when the Commission itself places parties on notice (as it did the first sellers and first buyers of natural gas in Order No. 94) that the rates they will be paying are subject to retroactive adjustment at a later date. This procedure, moreover, is squarely analogous to that in section 4(e) of the NGA in which the published rates, by express terms of the statute, remain subject to later modification and are therefore provisional in nature. 15 U.S.C. Sec. 717c(e). Notice does not relieve the Commission from the prohibition against retroactive ratemaking. Instead, it changes what would be purely retroactive ratemaking into a functionally prospective process by placing the relevant audience on notice at the outset that the rates being promulgated are provisional only and subject to later revision. This in no way dilutes the general rule that once a rate is in place with ostensibly full legal effect and is not made provisional, it can then be changed only prospectively.
 
 
 38
 In sum, we have found no support for the Commission's contention that on a finding of sufficient cause, it has the authority, under section 4(d), to waive the filed rate doctrine. Thus, as the Commission had failed to provide adequate notice to the downstream purchasers that the price they would be paying for gas during the 1980-83 period would be subject to adjustment, the Commission was without authority to impose a retroactive surcharge for whatever cause.
 
 
 39
 The Commission may well be correct in its assessment of the equities here involved and of the distortion in market signals that may result from the allocation of $1.5 billion in prior production costs to current sales. We are unaware, however, of any principle in equity or law that empowers an agency to ignore explicit legislative commands in order to mitigate the damage its errors of judgment or rulemaking delays may have caused.
 
 
 40
 B. FERC's Power to Limit Panhandle's Carrying Cost Recovery
 
 
 41
 Because we find that direct billing for these charges is unlawful under the Act, it follows that we need not decide the question of the lawfulness of FERC's denial of interest in excess of sixty days to Panhandle.
 
 III. CONCLUSION
 
 42
 For the reasons discussed above, we hold that as it has no authority, under section 4(d), to waive the filed rate doctrine, the Commission has invalidly reinstated its prior orders. Accordingly, we dismiss as moot the petition in No. 89-1186, grant the other petitions for review, again strike the orders authorizing direct billing, and remand to the Commission for further proceedings consistent with this opinion.
 
 
 43
 So ordered.
 
 
 
 *
 Judge Ginsburg heard argument in, but did not participate in the disposition of, this case
 
 
 **
 Transcontinental Gas Pipe Line Corp., 32 F.E.R.C. p 61,230, reh'g and clarification denied, 33 F.E.R.C. p 61,213 (1985); Texas Eastern Transmission Corp., 32 F.E.R.C. p 61,493, reh'g denied, 33 F.E.R.C. p 61,257 (1985), Texas Gas Transmission Corp., 33 F.E.R.C. p 61,032, reh'g denied, 33 F.E.R.C. p 61,596 (1985); Panhandle Eastern Pipe Line Co., 33 F.E.R.C. p 61,218 (1985), reh'g denied 34 F.E.R.C. p 61,231 (1986); and Trunkline Gas Co., 33 F.E.R.C. p 61,217 (1985), reh'g denied, 34 F.E.R.C. p 61,021 (1986)